Michael J. GUIDRY, Plaintiff,

v.

KEM MANUFACTURING CO.,
Defendant,

and

DRACKETT PRODUCTS CO., et al.,
Defendants-Third-Party
Plaintiffs-Appellants,

v.

KEM MANUFACTURING CO., Third-
Party Defendant-Appellee.

No. 80–3920.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1982.

Harry McCall, Jr., New Orleans, La., for third-party defendant-appellee.

Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, La., for third-party defendant-appellee.

Before COLEMAN, POLITZ and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from a judgment denying Appellant's third-party claim for contribution and indemnity from Appellee in a products liability action involving two drain declogging compounds manufactured or distributed by Appellant and Appellee respectively. The primary question between these parties at trial was whether the label on Appellee's product contained an unreasonably inadequate warning to the original claimant which was a cause of his injury. The district court, sitting without a jury, found that the label was a sufficient warning to the original claimant, and that its asserted deficiencies were not a cause of his injury, because the original claimant testified that he read the label and understood and appreciated the dangers involved in the use of the product, including those which Appellant asserts were inadequately warned of. We hold that the district court's findings are not clearly erroneous, and that the court, in denying Appellant's cross-claim, correctly applied Louisiana products liability law. We affirm the district court's judgment.

I.

In 1964, the injured party, Michael Guidry, was hired by the Church of the Immaculate Conception in New Orleans to work as an operating engineer. Guidry's duties included maintaining the kitchen sinks in the church's rectory. These sinks would often clog, and Guidry worked on them about three times a month. Guidry used Drano, an alkali-based drain declogger distributed by Appellant Drackett Products Company ["Drackett"], to unclog the sinks. Guidry became concerned that Drano was harmful to the drains, and in October 1971, a salesman sold Guidry twenty-four bottles of Thermakem, an acid-based drain declogger manufactured and distributed by Appellee Kem Manufacturing Company ["Kem"]. The warning label on the Thermakem provided, in part, as follows:

[Front]
"DANGER–POISON
" . . . .
"Contains sulfuric acid 'with dibutylthiourea'
"Read complete directions on back panel. Can cause severe burns. Do not mix with any other compound."
[Back]
"DANGER–POISON
" . . . .

"Contains sulfuric acid with dibutyl-thiourea

"CAN CAUSE SEVERE BURNS

"Avoid contact with skin, eyes, or clothing.

"....

"CAUTION:

"Do not add water or any other chemical to this compound as violent reaction will occur. Do not use where other drain chemicals are present. Do not stand over drain while using this compound and as a safety measure use an eye shield...."

Guidry read this label and understood it. He knew that Thermakem could not be used with another drain chemical, or where another drain chemical was present. Guidry stopped using Drano, and by the end of February 1972, he had used several bottles of Thermakem without any problem.

Shortly after 7:30 a.m. on Monday, March 6, 1972, the church's pastor, Father Baudoin, told Guidry that the kitchen sink was not running properly, and he asked Guidry to check it. The cook "said the same thing" to Guidry. Guidry had not worked the preceding Saturday or Sunday. Before Guidry began working on the sink, someone connected with the church used Drano in an unsuccessful attempt to unclog it. This prior use of Drano had occurred not earlier than the preceding Saturday afternoon, and may also have occurred on Sunday. No one told Guidry that Drano had been used, nor did he ask anyone whether another drain chemical had been used. There is no evidence whether or not Guidry was generally aware that there was Drano available at the church or that others used it there.

Guidry took a full, unopened bottle of Thermakem, went to the kitchen sink, saw there was no water in it, and poured the Thermakem into the drain. The Thermakem and Drano reacted with the water in the drain trap to cause an explosion, which left Guidry partially blind.[1]

Guidry sued Drackett and Kem, and Drackett cross-claimed against Kem for indemnity and contribution. Based on the jury's answers to special interrogatories, the district court rendered judgment for Guidry against Drackett only, and denied Drackett's cross-claim against Kem. Drackett appealed the denial of its cross-claim, and this Court decided that the jury's answers to two of the special interrogatories, each inquiring in substance whether Kem negligently failed to warn Guidry in a manner which was a proximate cause of his injury, were in irreconcilable conflict with each other. The case was accordingly remanded for a new trial on the cross-claim. *Guidry v. Kem Manufacturing Company,* 598 F.2d 402 (5th Cir.), *rehearing denied,* 604 F.2d 320 (5th Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980).[2] After a bench trial following the remand, in which the testimony at the first trial was introduced together with other evidence, the district court found that Guidry fully understood the warning label on the Thermakem and would not have used the product had he known Drano had been previously used in the drain. The court decided that Kem did not negligently fail to warn Guidry of the dangers inherent in the use of its product, and denied Drackett's cross-claim.

II.

Drackett contends that the district court did not comply with this Court's remand, for it refused to decide "the crucial factual question" whether Kem's label was defective. We disagree. The district court's opinion shows on its face that the court found the label to be a sufficient warning to Guidry and that no asserted deficiency in the warning caused the injury. Our prior reversal was not based on an insufficiency, but rather on a conflict, in the fact-findings, and we did not direct that findings on any particular factual theory be made, but rather simply remanded for a new trial on

---

1. Guidry's blindness was caused by an alkali burn.

2. Drackett apparently settled with Guidry following the judgment in the first trial, and the reasonableness of that settlement has not been questioned.

Drackett's cross-claim for contribution. There is no merit in the contention that the district court failed to comply with our prior mandate.

■ Guidry testified that he had used several bottles of Thermakem before the accident; that he read and understood the warning label; and that he would not have used Thermakem had he been told Drano or any other drain chemical had been used.[3] Because of this evidence, the trial court found that Guidry was properly informed by Kem and fully understood the warning label, and would not have used the Thermakem had he known of the prior use of the Drano. The court further found that Kem did not negligently fail to warn Guidry of the dangers inherent in the use of its product, and that Drackett was guilty of negligence which proximately caused the accident.[4] These findings are not clearly erroneous.

3. Guidry's testimony includes the following:

"Q [by Mr. D'Amico, Guidry's counsel] Now, Michael, let's return to the date of the accident, that Monday morning, March 6 of 1972. Had anyone told you that any other drain cleaner had been put into the kitchen sink before you attempted to unplug it with the Thermakem?

"A No, sir.

[Objection made and overruled.]

"EXAMINATION BY MR. D'AMICO:

"Q If anyone had told you, Michael, that some other chemical product, such as Drano, had been put into that kitchen sink would you have used that Thermakem that morning?

[Objection made and overruled; witness states he understands the question.]

"WITNESS:

"I would have not used anything else in the sink if I knew anything else was put in, I would not have used the Kem or I would not have used anything.

". . . .

"Q [by Kem's counsel] Now, Mr. Guidry, Mr. D'Amico asked you if you had known there was Drano in that drain would you have used the Thermakem, and you said what?

"A No.

"Q Why?

"A Because I knew you can't—they said on your bottle not to use any other chemicals in it.

"Q And, not to pour it in where any other chemicals were there?

"A That's right, that's right, your bottle.

"Q And, you had read that label on the yellow [Thermakem] bottle?

"A I read it when I first purchased it.

"Q And, you knew because of what was on that label that you don't pour it where something else is in that drain?

"A That's right.

"Q And, if you had known, if somebody had said to you, that 'Michael, look out, there's Drano or anything else in that drain—'

"A I would have stopped.

"Q You wouldn't have used it?

"A That's right.

"Q Now, you also told us before that you knew the Thermakem was sulphuric acid?

"A After I read the ingredients, yes, sir.

"Q Because it says it on the label?

"A That's right."

4. In its "Findings of Fact," the court found that ". . . Guidry . . . knew Thermakem was sulfuric acid," that "the [Kem label] warning was read by Guidry, who fully understood it and would not have used the Kem had he known Drano had been used in the drain," and that ". . . there was no negligence on Kem's part as pertains to Guidry—even though Kem's label might have been more articulate insofar as the general public is concerned—because Guidry was properly informed by Kem and fully understood the warning on the label."

Although the court below alluded to the possibility of improvement in the Kem label "insofar as the general public is concerned," it expressly refused to find the label insufficient for such purpose, and noted that it found the label constituted "a broader warning than suggested by Drackett."

Under its "Conclusions of Law" the trial court stated, *inter alia:*

"It appears . . . that [in the hearing following remand] Drackett did not pursue the issue of whether its product was defective and it was negligent. Pretermitting the question of whether or not this Court is bound by the jury's verdict with respect to such issue [*i.e.,* the finding against Drackett in the prior trial], the Court is of the opinion that the Drackett product was defective, and that Drackett was guilty of negligence in a manner which was a proximate cause of injury to Michael Guidry. On the other hand, the Court is of the opinion that insofar as the injury which was sustained by Michael Guidry is concerned, Kem did not negligently fail to warn Guidry of the dangers inherent in the use of its product, and with respect to Guidry it committed no negligent act."

In accordance with the provision of the trial court's memorandum order that "to the extent that any of the conclusions of law constitute findings of fact, they are so adopted," we treat the last above-quoted statements as findings of fact.

Drackett, however, argues that Kem negligently failed to warn Guidry that a residue of another drain chemical could be present even though that drain chemical had been used earlier. We reject this argument for two reasons. First, Guidry testified that he understood the warning label and that he would not have used Thermakem had he known that Drano, or any other drain chemical, had been *used*. The trial court was entitled to credit this testimony. Indeed, there was none to the contrary. Second, there is no evidence that Guidry was unaware that a residue of Drano could remain in a drain following use of the drain after application of the Drano. In fact, the reasonable inference from Guidry's testimony is that he was aware that a residue could remain in the drain, and that this was the reason he would not have used Thermakem had he known that Drano had been used earlier (presumably the use over the weekend when he was absent).

■ Drackett next contends that the scope of Kem's warning label was too narrow because it failed to tell Guidry how to avoid the dangers warned against. Even though a user has been warned of the dangers inherent in the use of a product, the manufacturer may still be liable if, under certain circumstances, it fails to tell the user how to avoid those dangers. Under Louisiana law, however, where the danger and the manner of avoiding that danger are matters of common knowledge or are known by the claimant, the manufacturer has no duty to warn. *American Ins. Co. v. Duo Fast Dixie, Inc.,* 367 So.2d 415, 417 (La.App. 4th Cir.1979); *Tri-State Insurance Company v. Fidelity & Casualty Ins. Co.,* 364 So.2d 657, 660 (La.App. 2d Cir.), *cert. denied,* 365 So.2d 248 (La.1978); *Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.,* 532 F.2d 501, 504 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977); *Thibodaux v. McWane Cast Iron Pipe Co.,* 381 F.2d 491, 495 (5th

Cir.1967). *See also Hebert v. Brazzel,* 403 So.2d 1242, 1245 (La.1981).[5]

■ Kem's label warned Guidry of the dangers, and it told him how to avoid them. Drackett insists, however, that the label was required to do more. It argues that Kem's label should have told Guidry how to determine whether another drain chemical was present, and if so, then how to get rid of it. We disagree for the following reasons.

First, the evidence shows that Guidry was quite familiar with drain chemicals. There is no evidence that he lacked any knowledge which a proper warning would have imparted. As the trial court found, on the basis of adequate evidence, Guidry knew not to use Thermakem if Drano had previously been used, because of the dangers this involved. There is no evidence that Guidry made any attempt to determine if Drano were present. Nor is there any evidence that his failure to do so was a result of a lack of knowledge on his part of how to make such a determination. The obvious, and only practical, way to make such a determination was to inquire of Father Baudoin or other church personnel whether Drano had been used. Guidry made no attempt to do so, and there is no explanation of why he did not. There is no indication that such an inquiry would not have elicited the correct information, and hence avoided the accident. There is no evidence that another method of determination should have been employed. Drackett infers that Guidry may have assumed that if Drano had been used it would have all washed out. But there is no evidence to support such an inference, and it seems improbable in light of Guidry's information that the drain was clogged. Further, Guidry's uncontradicted and unmodified testimony, which the trial court credited, that on the occasion in question he would not have used Thermakem if he had been aware that Drano had previ-

5. In *Hebert,* the Louisiana Supreme Court held that a valve manufacturer did not have a duty to warn an injured oil field worker of a danger in the use of its valve which "an ordinary oil field worker would appreciate" or which would be "obvious" to such a worker.

ously been used, suggests that he realized it might *not* have all washed out.[6]

Second, the evidence shows that Thermakem is sold only to industrial and institutional users by direct sales representatives. Kem does not make any sales to the general public. Because of the relative expertise of its probable users, and in view of Guidry's own experience, the scope of Kem's duty to warn is not as broad as Drackett insists. ". . . Louisiana [law] does not hold a manufacturer is compelled to warn sophisticated purchasers of dangers which the buyer either knows or should be aware." *Bradco,* 532 F.2d at 504. From the evidence presented, the district court could readily decide that Kem was not bound to tell Guidry, an experienced, licensed operating engineer who was familiar with drain chemicals, how to determine their presence in a drain. Kem did in fact, as the district court found, convey to Guidry the danger of using its product where another drain chemical was present or had been used. The evidence shows that the obvious and only practical way of ascertaining the pres-

ence of another drain chemical, short of conducting a chemical analysis of the drain and its contents, was to ask whether another drain chemical had been used. No other method has been suggested. Under the circumstances, the knowledge that a drain was clogged made it obvious to one in Guidry's position and with his knowledge that he could not determine whether another drain chemical had been used without making inquiry of Father Baudoin or other church personnel. Louisiana law did not require Kem to state the obvious.

Drackett's reliance on *Ducote v. Chevron Chemical Company,* 227 So.2d 601 (La.App. 3d Cir.1969), and *Boyl v. California Chemical Company,* 221 F.Supp. 669 (D.C.Or.1963), is misplaced. In those cases, the trier of fact determined that the warning labels were inadequate and misleading. Here, there is no comparable deficiency in the warning and the trier of fact has found that the Kem label provided Guidry an adequate warning and no deficiency in the label caused his injury.[7]

---

**6.** Drackett also suggests that Guidry would not have been concerned about a Drano use as long ago as Saturday afternoon. Again, there is simply no evidence to support this. Guidry testified that on that early Monday morning he had been told the drain was not properly functioning and would not have used Thermakem if he knew another chemical had been put in. There is nothing in his testimony to suggest that he was referring in any way, much less exclusively, to other chemicals having been put in earlier that same Monday morning, as opposed to over the weekend. Nor do other parts of Guidry's testimony reflect any general understanding or belief on his part that other drain chemicals put in on a Saturday afternoon would be expected to have sufficiently washed out of the neck or trap of the drain so as not to present a danger from using Thermakem in the drain when it was reported clogged just after the workday began early Monday morning.

Drackett does not suggest that Guidry's testimony contains any sort of express assertion that he did not realize the seriousness of the danger of using Thermakem with Drano present, either in respect to the possibility of the chemicals violently reacting so as to suddenly strike his face or the possible consequences if this occurred. The district court found Guidry "fully understood" the warning.

**7.** *Ducote* was a suit by cotton farmer plaintiffs against the manufacturer of the chemical herbi-

cide "Paraquat" which had damaged their crops when they used it. "Paraquat" had a warning, which the farmers read, that it could damage "immature bolls." The plaintiffs, "experienced farmers," did not use the Paraquat until they had determined that the cotton was mature, using "the method they normally employed." The defendant manufacturer contended the farmers should have instead used the "knife test" to make this determination. 227 So.2d at 604. In affirming the trial court's fact-findings and judgment against the manufacturer, the appellate court stated:

"The directions on the label prescribe no test for determining maturity of cotton. It would appear that if a proper test is so crucial then such a method for testing should be described on the label itself." *Id.* at 604.

*Ducote* would be more nearly analogous to the case at bar if Guidry had used some recognized means for determining the presence of Drano, and Kem had defended on the basis that he should instead have used some other, special method not referenced on its label. In *Ducote,* the appellate court also stated:

"The exhibits of advertising materials introduced in this case, when taken as a whole, demonstrate to this Court that the farmers here were not only not warned about the potential dangers but were in fact led to believe that this particular product would

The judgment of the district court is affirmed.

AFFIRMED.

produce the desired results with little or no risk." *Id.* at 605–06.

Here, by contrast, the Kem label did warn about the potential dangers and Guidry was not in fact misled, but was aware of the danger.

*Boyl* is a district court opinion in a case tried to the court without a jury, in which judgment was rendered for the housewife plaintiff against the manufacturer of a weed killer chemical, some diluted residue of which plaintiff had thrown on her lawn and a few days afterward absorbed through her skin while sunbathing there. The court notes that "no warning or protective advice whatsoever as to ... lingering risks of the liquid after returning to a dry or solid form is given, or even reasonably inferable. In fact, the directions ... could mislead a user to concluding that there was no lingering risk ...." 221 F.Supp. at 675–76 (footnote omitted). In the case at bar, however, the Kem label warned of use "where other drain chemicals are present" and Guidry understood this to warn against Thermakem's use where Drano had previously been used in the drain.