**Luke Joseph PERRICONE, Plaintiff-Appellee,**

**United States Fidelity and Guaranty Company, Intervenor-Appellee,**

v.

**The KANSAS CITY SOUTHERN RAILWAY COMPANY, Defendant-Appellant.**

No. 81–2514.

United States Court of Appeals, Fifth Circuit.

May 19, 1983.

---

Roger S. McCabe, Beaumont, Tex., Brian R. Davis, Austin, Tex., for defendant-appellant.

Gilbert T. Adams, Jr., Richard J. Clarkson, Beaumont, Tex., for Perricone.

W.E. Harper, Beaumont, Tex., for U.S. Fidelity and Guar. Co.

Before RANDALL and HIGGINBOTHAM, Circuit Judges, and BUCHMEYER *, District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this diversity case the railroad appeals from a judgment awarding damages to a motorist for injuries suffered when the bottom of his car struck the railroad's tracks at a crossing. The railroad argues that the trial court erred in sua sponte resubmitting the case to the jury after explaining to them the effect of their returned answer that the motorist was 70 percent negligent, in granting plaintiff a full award on a judgment n.o.v. despite the jury's finding following the second submission that the motorist's negligence was 50 percent, and in ordering a conditional new trial. The railroad also argues that the jury's damage award was excessive and a new trial on damages must be had. We affirm the giving of the supplemental instruction in the absence of contemporaneous objection. Because there was no predicate motion for

* District Judge of the Northern District of Texas, sitting by designation.

directed verdict and there was in any event sufficient evidence to create a jury issue of contributory negligence we reverse the judgment n.o.v. We also reverse the district court's conditional grant of a new trial and affirm the jury's damage verdict.

This is the second appellate trip for this case. On its first trip we reversed a jury award of $170,000 as excessive and discovering other error reversed the finding of liability. *Perricone v. Kansas City Southern Railway Co.,* 630 F.2d 317 (5th Cir.1980).

After a second trial the jury returned its verdict setting Perricone's damages at $105,000 but also found that his injuries were 70 percent attributable to his negligence. When the clerk read the jury's answers in open court the judge immediately told the jury:

> Mr. Foreman and members of the Jury, the Court failed to advise the Jury, and we feel that under the circumstances we should that if you find the Plaintiff more than fifty percent negligent, in other words, you find the Plaintiff more negligent than the Defendant, he will not be able to make any recovery of any damages, whatever. The Court should have advised the Jury of this fact at the time that it was submitted to you, and if you would like to reconsider your verdict, in view of this information, then the Court will give you the privilege of doing so. Now, you might retire to the jury room and decide what you wish to do in this regard....

The jury deliberated for fourteen minutes and returned the same damage verdict but reduced to 50 percent Perricone's contribution to his injury. While the jury was deliberating for the second time the trial judge invited objections to his supplemental instruction. The railroad's only objection was as follows:

> The Defense would object to the Court's referencing the amount of reduction of damages, in that there was explained in full to the Jury initially how not to reduce the damages. The Defense objects to that portion of the additional instructions to the Jury.

In other words, the railroad objected neither to the act of resubmission, nor to the jury's being told that a finding of more than 50 percent contributory negligence would bar plaintiff's recovery. Its only quibble was with the trial judge's statement that a finding of 50 percent or less contributory negligence would mean a pro rata reduction in the plaintiff's recovery.

After the second verdict was received the trial judge on his own motion granted a judgment for the full $105,000, notwithstanding the finding of 50 percent contributory negligence. He also granted a new trial conditioned on the reversal of the judgment n.o.v.

### The Supplemental Instruction

■ The supplemental instruction would ordinarily have been a correct charge in federal court. Under Texas law a plaintiff cannot recover if his negligence contributed more than one half to his injury. In a Rule 49(a) submission it is proper to tell the jury the effect of their answers to interrogatories. *Gonzales v. Missouri Pacific Railroad Co.,* 511 F.2d 629, 632 (5th Cir.1975). The trial judge did not explain the effect of a finding of greater than 50 percent contributory negligence in the charge he first gave. No party requested him to do so or objected to his not doing so.

It does not follow, however, that the instruction should have been given after the jury returned their answers in open court. There is a substantial risk that such a supplemental instruction given immediately to the jury on its return is coercive. It contains the risk that the jury may conclude that it is being told its finding of 70 percent contributory negligence was unsound. That risk was reduced by the instruction that the trial court gave. There was nothing coercive or suggestive in its content. It was phrased in a neutral manner and accurately expressed the law. There remains, nonetheless, a not inconsiderable risk. The trial judge is a potent figure indeed. His instructions are lethal. He can communicate his attitude in a thousand ways from a cocked eyebrow to a sideways glance. Those will not be of record. They are not reviewable. Trial judges are disciplined ul-

timately only by their good faith and integrity and by an occasional reminder from their appellate brethren to be constantly vigilant of their power.

Intersecting with these practical concerns about power is the mandate of the Seventh Amendment. We have said:

> Entry of judgment upon a jury's special verdict with written findings of fact is subject not only to precedential guidelines but to a constitutional restraint as well. The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly. [Citation omitted.] This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the trial judge may have been the likely cause of the difficulty and largely produced the apparent conflict. [Citation omitted.]

*Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir.1973). The Seventh Amendment should not be invoked as a justification for keeping the jury in the dark about the legal effects of their answers. Yet it should not normally justify "reconsideration" of those answers, either.

We describe only institutional risks. Nothing in this record suggests that the trial judge intended to tell the jury more than he did. We find, nonetheless, that there is such a high risk of being misunderstood that the instruction ought not have been given. We are mindful that there is a risk that the jury's will was not expressed by its final verdict in that it intended to award 30 percent of $105,000 rather than 50 percent of that amount. We have then a risk of the jury's will being frustrated whatever the trial court did. Choosing to remain silent is in fact a decision to accept the risk that the jury did intend to express relative fault in an award of 30 percent of $105,000. This Hobson's choice, however, could have been avoided by a request that

the jury be instructed at the outset or by an explanation of the legal effects of answers during closing argument. Because there is a balance to be struck and the trial judge is on the scene we are not prepared to find this error to be so fundamental as to survive the absence of objection. The result of the path we follow is that while we are aware of the risks of such a supplemental instruction, we will not listen to counsel complain about the trial judge's call when he then uttered not a peep—even though the judge specifically invited any objection. *See Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1156 (5th Cir.1981).

The railroad maintains that it should not be deemed to have "waived" error when it had nothing to gain by failing to object. The railroad contrasts this case with *Safeway Stores, Inc. v. Dial,* 311 F.2d 595 (5th Cir.1963), in which some of the jury's answers suggested negligence while others did not and thus failure to object to resubmission could have been a "tactical gamble." Yet the avoidance of gamesmanship is not the only policy that the contemporaneous objection rule seeks to vindicate. Refusing to routinely consider arguments not made to the trial court is an essential by-product of its distinct institutional rule. We have previously recognized that a "waiver" may occur even when the waiving party's silence could not have been strategic. *See Ballou v. Henri Studios,* 656 F.2d 1147.

We have not found any case from our circuit reviewing a trial court's decision to return a case to the jury when the answers were not legally inconsistent. In *Morrison v. Frito-Lay, Inc.,* 546 F.2d 154 (5th Cir. 1977), we held that "in its discretion, the trial court may submit one or more interrogatories to the jury for the purpose of harmonizing apparent inconsistencies or ambiguities when such harmonization and resolution of ambiguities might properly be performed by the court itself ..." *Id.* at 161. In *Morrison,* however, the jury had answered yes to an interrogatory on the existence of contributory negligence but 0 percent to an interrogatory on the percentage of contributory negligence. Here by contrast there were no legally inconsistent responses to be harmonized.

In *McCollum v. Stahl,* 579 F.2d 869 (4th Cir.1978), *cert. denied,* 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979), the trial judge resubmitted a civil rights case to the jury after it returned answers to special interrogatories finding no wrongful discharge and awarding no actual damages but finding that the discharge had been "maliciously, wantonly or oppressively done" and awarding $15,000 in punitive damages. On resubmission the jury found the discharge to be both wrongful and malicious and awarded $3,750 in actual and the same amount in punitive damages. The Fourth Circuit held that it was reversible error for the trial court not to have entered a judgment exonerating the defendant on the first set of verdicts. There is some indication that the jury was unaware of the effect of its finding of no wrongful discharge. *Id.* at 870. The appeals court nonetheless concluded that "the remand of the questions to the jury was tantamount ... to a direction to the jury to find liability in order to warrant the award of damages." *Id.* at 871. While we do not necessarily agree with this characterization of the resubmission, we think the *McCollum* result is sound and can be reconciled with our holding today. In *McCollum* the defendant objected to sending the case back to the jury. *Id.* at 870. Here the railroad objected only to some of the *contents* of the supplemental instruction, even though it was unquestionably an accurate statement of Texas law.

The teaching of the case law explicating the Seventh Amendment is that trial by jury is a constitutionally footed right available if exercised. The structure of the Federal Rules is not that the case will be submitted to a jury unless waived but that the right is waived unless demanded. F.R.

Civ.P. 38. A similar idea of right only if demanded governs a Rule 49 submission. A fact issue not submitted to the jury is, absent a request or objection, deemed to be submitted to the judge. F.R.Civ.P. 49(a). Here defendant had a constitutional right to the verdict as returned. Requiring an objection to the resubmission fits well into the constitutional matrix of the Seventh Amendment.[1]

### The Judgment N.O.V.

■ Perricone did not move for a directed verdict. He cannot therefore be granted a judgment n.o.v. Perricone's motion for a directed verdict is a prerequisite, virtually jurisdictional. It follows that the trial court's judgment n.o.v. must be reversed.

### The Grant of a New Trial

■ Nevertheless, on appeal "[w]e may inquire whether there was *any* evidence supporting ... the jury's finding ..., but we may not question the sufficiency of whatever evidence we do find." *Little v. Bankers Life & Casualty Co.,* 426 F.2d 509, 511 (5th Cir. 1970). "Our consideration is limited to whether plain error has been committed which, if not noticed, would result in a manifest miscarriage of justice." *Id.* Nevertheless, we need not consider whether Perricone's case meets this rigorous "any evidence" test, if it in any event fails to meet the more lenient standard to be applied to the conditional grant of the new trial on sufficiency of the evidence grounds.

We are reluctant to disturb the considerable discretion of a trial judge to grant a new trial. Here we must. In *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930–31 (5th Cir.1982), we set out the standard for reversing the granting of a new trial. We

---

1. Although Perricone has not raised the point, there is a possibility that the trial judge's original charge misled the jury into believing that Perricone could recover, albeit to a lesser extent, even if his contributory negligence exceeded 50 percent. The jury was told:

> Therefore, if you find that the Plaintiff is entitled to recover damages, but if you find that his injuries were also proximately caused in part by his own contributory negligence, then you would determine to the effect in which his own contributory negligence

> contributed to his injury, and the damages will be diminished by the Court in proportion to the extent of negligence attributable to the Plaintiff if any.

Because neither party has briefed or argued the impact of this instruction, and because we think the resubmission is affirmable on other grounds, we do not reach the question of whether resubmission could be justified on the basis of this potentially misleading component of the original charge.

there suggested that deference to the jury decision is at its greatest when the issues are simple, the evidence is not heavily disputed, and there were no pernicious occurrences at trial. We stated:

> When all three factors are present, our deference to the jury is reinforced by our confidence in its ability to understand the issues, to evaluate credibility and sort through conflicting testimony, and to act reasonably and fairly in the absence of prejudicial influences. In this situation there is little, if any, need to defer to the judge as against the jury, and we will not affirm an order granting a new trial unless on review we are satisfied, independently, that the jury verdict was against the great weight of the evidence.

*Id.* at 931. "The 'great weight of the evidence' standard is not easily met," we added. *Id.*

The issues in this case were straightforward and well-suited to jury resolution. Perricone claimed that the railroad had negligently maintained the railroad crossing; the railroad claimed that the crossing was safe and that Perricone had not used reasonable care in traversing it. There were no pernicious occurrences at this two-day trial, ably presided over by the trial judge below.

As for the second factor, the extent to which the evidence is in dispute, we note that we reversed a conditional grant of a new trial in *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360 (5th Cir. 1980), where "[i]n certain critical respects, the evidence was highly conflicting, but in many other respects it was undisputed," and, on the whole, there was "no great weight of the evidence in any direction." *Id.* at 363, 367. *Conway,* like the present case, was a tort action, in which the main issue was which of two trucks had been on the wrong side of the road. Here, as in *Conway,* the evidentiary disputes, such as the condition of the crossing and the motorist's speed, were circumscribed by areas of agreement, such as how the accident oc-

curred. We therefore apply the great weight of the evidence standard here.

The trial judge ordered a conditional new trial because he doubted whether there was sufficient evidence to support the jury's verdict of 50 percent contributory negligence. The frame of Perricone's car apparently snagged on the first rail on the third set of tracks in the crossing. Photographs revealed that the first two sets of tracks were raised above the third, thus making it possible for a car crossing the tracks to lose contact with the road. Experts differed, however, as to whether this could occur if the car was travelling less than thirty miles per hour, the local speed limit. Perricone testified that he had been going ten to fifteen miles per hour when his car snagged the rail. Two Beaumont police officers, however, testified that immediately after the accident Perricone said he had been driving "thirty or thirty-miles an hour" or "approximately thirty miles an hour." The jury may have declined to credit Perricone's version of his statement to the police officers.[2] It may equally have been skeptical of his statement that he could not recall ever having driven over the crossing before, given the fact that he lived only a mile to a mile-and-a-half away and that his job as an insurance agent required him to log many miles on the streets of Beaumont. Further, the buckling of the automobile and Perricone's head and neck injuries could have been believed to be sufficiently serious as to lead the jury to conclude that he had been going faster than ten to fifteen miles per hour.

In sum, there was abundant evidence that the jury could have credited that Perricone failed to slow down at the railroad crossing despite the fact that it was marked with a sign and its incline was visible on this clear, dry day. With deference, as we see the case the jury's finding of contributory negligence was not against the great weight of the evidence. It fol-

---

2. Perricone testified:

I told them, from what I could recollect, that I was going under thirty miles an hour, because I was hurting, I didn't want to an-

swer questions. He asked me a question, and I said I was going under thirty miles an hour.

lows that the conditional grant of a new trial must be reversed.[3]

### The Damage Award

 In the prior appeal of this case we held:

Viewing the evidence in the light most favorable to the verdict, the plaintiff sustained an earning loss of $4,000. He lost 30% of the motion in his neck. He sustained substantial damages to his teeth and dental costs occasioned thereby. He will suffer occasional periods of discomfort from the whiplash. Yet, the jury fixed his damages at $170,000. In the face of appellate attack this Court cannot sustain a verdict of that size for the injuries established by this record.

630 F.2d at 319. We are now asked by the railroad to decide whether the jury's damage verdict of $105,000 in the second trial, of which Perricone would receive one-half, should be sustained. This is a close call, but we think it should be.

As we noted earlier, "[A]n examination of the Fifth Circuit cases in this field reveals only rare instances in which the Court felt bound to set aside a jury award for its excessiveness." *Perricone v. Kansas City Southern Railway Co.,* 630 F.2d at 319. When approved by the trial judge, such awards will be overturned only when contrary to right reason or for a clear abuse of discretion. *Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1390 (5th Cir.), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980).

The second trial of this case, unsurprisingly, was not a carbon copy of the first. The evidence as to Perricone's medical and dental expenses was essentially unchanged, but the evidence as to loss of earnings was not. This time Perricone testified he had lost $32,000 in income as a result of the accident. He further testified that his injuries were costing him $310 a month, because

the need to rest during the middle of the day prevented him from earning commissions. Finally, Perricone testified that he had severe headaches requiring him to take ten to fourteen "Anacins" a day. The damage verdict was not so excessive as to necessitate a new trial.

### Conclusion

In this case we are asked to accommodate the deference due a trial judge with the deference due a jury. Mindful that the jury is the factfinder, we reverse the judgment n.o.v., reverse the conditional grant of a new trial, and affirm the damage award. We affirm, however, the resubmission of the case to the jury. Accordingly, we reverse and remand so that judgment may be entered upon the jury's answers to the interrogatories following resubmission.

REVERSED and REMANDED.

---

**3.** Perricone emphasizes that one of the railroad's experts doubted the car could have snagged the rail at any speed *at or above* thirty miles per hour, because it would have flown over the tracks. This expert, however, theorized that Perricone must have driven off the roadway—a conclusion that was circumstantially supported by the testimony of several witnesses. Thus, there were two paths the jury could have travelled to a finding of contributory negligence. We reiterate that such a finding was not against the great weight of the evidence.