853 F.2d 1258
 Prod.Liab.Rep.(CCH)P 11,914
Michael Lynn RICHARD, Plaintiff-Appellant, Cross-Appellee,
v.
The FIRESTONE TIRE & RUBBER CO., Defendant-Appellee, Cross-Appellant,
v.
HARDESTY TIRE REPAIR, Intervenor-Appellee.
 No. 87-4815.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 7, 1988.
Rehearing and Rehearing En Banc Denied Oct. 12, 1988.
 
 Hunter W. Lundy, Gregory P. Massey, Lake Charles, La., for plaintiff-appellant, cross-appellee.
 William J. Hamlin, Michael T. Tusa, Jr., New Orleans, La., for Firestone.
 Thomas Bergstedt, Lake Charles, La., for Hardesty.
 Appeal from the United States District Court For the Western District of Louisiana.
 Before GEE, DAVIS and SMITH, Circuit Judges:
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 Both parties to this product liability action are disappointed with the verdict rendered in this case and appeal. The suit followed Richard's injury that occurred when a Firestone tire rim separated while he was mounting the tire on a truck. Firestone complains of the jury finding that it failed to warn of danger to workmen assembling or mounting tires equipped with its multi-piece rims. Richard complains of the reduction in his award based on the jury's finding that his fault was ninety percent responsible for the accident. We find no error and affirm.
 
 I.
 
 2
 On the day of the accident, Richard, an employee of Hardesty Tire Service, responded to a call from Louisiana Metals Company to fix four flat tires. He fixed three tires without incident but suffered a serious injury while working on the fourth, a tire equipped with a Firestone two-piece rim. Richard had repaired the flat, reassembled the tire rim, and inflated the tire with seventy-five pounds of air. The tire exploded as Richard prepared to mount it on a truck axle; the rim's side ring separated from the rim and struck him in the forehead.
 
 
 3
 Richard sued Firestone and Louisiana Metals Co., Inc., in Louisiana state court. He alleged that defects in the design, manufacture, and production of Firestone's rim, along with Firestone's failure to warn users about the danger of its two-piece rim, caused his injuries. At Firestone's motion, the action was removed to federal district court where the case was tried to a jury.
 
 
 4
 After the jury returned what the district court considered to be an inconsistent verdict, the court directed the jury to retire for further deliberation. The jury found the rim defective because Firestone failed to warn of its dangers and assessed Richard's damages at $629,000. However, the jury also found Richard ninety percent at fault, and his award was reduced accordingly. This appeal followed the district court's denial of all post trial motions.
 
 II.
 
 5
 Firestone's first ground for appeal focuses on the district court's decision to retire the jury for further deliberations after the jury initially returned its verdict. Interrogatory 1(a) asked whether Firestone's rim was defective, and 1(b) asked if the defect caused Richard's injury. The court's special verdict form instructed the jury to "go no further" if it answered "no" to 1(a) or 1(b). Initially, the jury answered "yes" to 1(a) and "no" to 1(b); however, it also answered the questions that followed 1(b).[1] The court found the verdict inconsistent, denied Firestone's motion for judgment on the jury's initial answers to the special interrogatories, and directed the jury to consider further its answers. During these deliberations the jury changed its 1(b) answer to "yes."
 
 
 6
 Courts are obligated to reconcile a jury's answers when possible. White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir.1987). Predicated on this fundamental rule, Firestone labors to explain how the jury's first answer to interrogatory 1(b) finding no causation between the defect and Richard's injury does not contradict the jury's response to Interrogatory 4, in which it assigned ten percent of the fault for Richard's injury to Firestone. We are persuaded that the district court was entitled to find these answers inconsistent. It was entitled to decline to enter judgment on the jury's findings that Firestone shares fault for an injury it did not cause.
 
 
 7
 Relying on White again, Firestone further argues that the district court should have ignored the answers to the interrogatories that followed interrogatory 1(b) and entered judgment for Firestone when the jury found no causation linking the defect in defendant's product to plaintiff's injury. In White, as in this case, the jury answered Special Issue 3 "We do not" when asked if it found that the defendants in that suit for fraud and breach of implied warranty knew the apartments they were selling had structural defects. It then ignored the court's instructions to refrain from answering the remaining questions once it answered no to this question. In answer to the remaining special issues the jury determined, inconsistent with its earlier answer, that the defendants had knowingly withheld structural information to induce the plaintiffs into entering a contract. The district court entered judgment for defendants predicated on the jury's answer to Special Issue 3. In affirming, we concluded that "if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions." White, 809 F.2d at 1161. Thus, in White we recognized the broad discretion the district court enjoys to refuse to consider interrogatories answered in violation of the court's instructions.
 
 
 8
 We have consistently given the district court wide discretion in deciding whether the jury's answers to the court's questions are clear. See Nance v. Gulf Oil Corp., 817 F.2d 1176, 1178 (5th Cir.1987); Landry v. Offshore Logistics, Inc., 544 F.2d 757, 761 (5th Cir.1977). As we noted in Nance, "[m]ere resubmission does not necessarily coerce a verdict." Nance, 817 F.2d at 1178.
 
 
 9
 Moreover, Fed.R.Civ.P. 49(b), which permits the trial court to resubmit inconsistent answers to interrogatories that accompany a general verdict, and our reading of Fed.R.Civ.P. 49(a) to allow resubmission of inconsistent special verdicts, underscore the scope of this discretion. See Nance, 817 F.2d at 1178; Perricone v. Kansas City Ry. Co., 704 F.2d 1376, 1379 (5th Cir.1983); Guidry v. Kem Mfg. Co., 604 F.2d 320, 321 (5th Cir.1979), cert. denied, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). The district judge, who has observed the jury during the trial, prepared the questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty. The judge also is in an excellent position to evaluate whether the jury will likely be able to resolve this uncertainty with proper guidance. See Geosearch, Inc. v. Howell Petroleum Corp., 819 F.2d 521, 527 (5th Cir.1987); McVey v. Phillips Petroleum Co., 288 F.2d 53, 59 (5th Cir.1961). Removing any uncertainty in the jury's findings obviously solidifies any judgment entered on the verdict and reduces the prospect of the dreaded retrial. We decline to disturb the district court's exercise of discretion in determining that the series of answers submitted by this jury was not clear and required resubmission.
 
 III.
 
 10
 Firestone also argues that the record evidence does not support the jury's findings that it failed to warn adequately of the dangers of the use of its product and that such failure was causally related to Richard's injury. We conclude that substantial evidence supports this finding. See Eyre v. McDonough Power Equip., Inc., 755 F.2d 416, 419-20 (5th Cir.1985).
 
 
 11
 Under Louisiana law, a manufacturer is strictly liable if the product left the manufacturer's control in an unreasonably dangerous condition and the condition is the legal cause of plaintiff's injuries. Bell v. Jet Wheel Blast, 462 So.2d 166, 168 (La.1985). Unreasonably dangerous conditions include the manufacturer's failure to provide adequate warning of dangers inherent in the product's normal use, if not within the knowledge of or obvious to the user. Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987); Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 115 (La.1986). A manufacturer may be liable if it fails to tell users how to avoid the product's inherent dangers. Guidry v. Kem Mfg. Co., 693 F.2d 426, 430 (5th Cir.1982).
 
 
 12
 Firestone insists that it breached no duty to warn, given that Richard knew to check rims for obvious misassembly before inflation because improperly assembled tires could explode. It points to Richard's testimony that he had three months of on-the-job training in truck tire repair, knew the importance of avoiding damaged pieces, and knew to clean rim pieces before assembly to insure proper fit. The testimony of Richard Hardesty, Richard's boss, corroborated this information.
 
 
 13
 However, the jury was entitled to believe the testimony of Richard's expert, Dr. Hugh A. Walls. He testified that slight out-of-roundness of the rim could combine with a slightly warped side ring to prevent the ring from seating properly, even without obvious misassembly. He further testified that this failure to seat could cause the tire bead to hang up on the side ring's edge during inflation, creating a potential for explosive rim separation. This paralleled the testimony of Richard and another eyewitness that the side ring appeared to be seated properly in the rim before the tire exploded.
 
 
 14
 Further, Richard and his employer testified that they received no warnings or instructions on two-piece rim assembly from Firestone. The record does not indicate that Richard knew to check for slight warping in the ring or out-of-roundness of the rim. Thus, the jury was entitled to conclude that Firestone failed to provide a particularized warning about the danger of even a slight misalignment between rim and side ring that was not noticeable at all or barely noticeable. In so doing, the jury was free to reject the testimony of Firestone's experts that, based on computer simulations and engineering principles, only a gross and obvious misalignment could precede such an accident.
 
 
 15
 For his part, Richard also argues that insufficient evidence supports the jury's finding that he was ninety percent at fault for this accident. We disagree. During cross-examination, Firestone's attorney led Richard through prior sworn deposition testimony indicating that Richard, anxious to finish work at the end of a hot day, did not follow all of his boss's instructions.
 
 
 16
 Richard testified at trial that he had inflated the tire fully and was preparing to mount it on the axle when the ring separated. However, in his deposition testimony Richard said his boss had told him to mount tires before inflating them, or to mount them after inflating them with just a few pounds of air. Had he followed either procedure, Richard would not have been standing directly in the ring's trajectory while mounting the fully inflated--and therefore more dangerous--tire. In his deposition, Richard also testified that at times he had followed these procedures before the accident. Thus, the jury was entitled to find that Richard's conduct was the predominant cause of his accident.IV.
 
 
 17
 These findings bring us to the novel issue of whether comparative negligence can apply to a failure to warn case under Louisiana products liability law. We conclude that it does apply.
 
 
 18
 We start with the Louisiana Supreme Court's guidelines for application of comparative negligence to products liability actions in Bell v. Jet Wheel Blast, 462 So.2d 166, 171 (La.1985). Under Bell, comparative negligence should apply to liability based on failure to warn if it would (1) realistically promote safer product use, and (2) not drastically reduce the manufacturer's incentive to make safer products. Id. at 171-72. A careful reading of the caselaw suggests that application of comparative negligence here satisfies both prongs.
 
 
 19
 In Bell, the Louisiana Supreme Court relied on prong one in refusing to apply comparative negligence to an employee who caught his hand in the chain-and-sprocket drive of a conveyor belt that lacked an adequate guard. Id. at 172. The court reasoned that "the application of comparative fault would not serve to provide any greater incentive to an employee to guard against momentary neglect or inattention so as to prevent his hand from being mangled by machinery." Id.
 
 
 20
 We relied on the Bell court's reasoning in concluding that comparative negligence applied to the plaintiff in Winston v. International Harvester Corp., 791 F.2d 430, 433-34 (5th Cir.1986), who was injured when he fell from his tractor after it left the road. We concluded that application of comparative negligence to Winston's facts would promote safer product use. Unlike the plaintiff in Bell, Winston's negligence in steering his tractor off the road "amounted to more than 'simple inadvertance' or 'momentary neglect.' " Winston, 791 F.2d at 434.
 
 
 21
 Under this reasoning, comparative negligence would promote safer product use in Richard's situation. The jury apparently believed that Richard hurried through assembly and inflation of the tire, ignoring his boss's instructions to mount the tire before fully inflating it. Thus, this is not a situation in which Richard simply looked away at a crucial moment or fell victim to some other form of "momentary neglect."
 
 
 22
 The Bell test's second prong also supports application of comparative negligence in this case. As we stated in Winston, this principle will not drastically reduce Firestone's incentive to make safer tire rims because Firestone " 'cannot reasonably rely on careless use by future plaintiffs to reduce its economic liability.' " Winston, 791 F.2d at 434 (quoting Nicholas v. Homelite Corp., 780 F.2d 1150, 1154 (5th Cir.1986). The rule's promotion of safer consumer use reinforces this conclusion; it reduces further the likelihood that Firestone can limit its liability in future cases by pointing to careless consumer conduct. Thus, we are satisfied that application of comparative negligence in this case is proper because it satisfies both prongs of the Bell test.[2]
 
 
 23
 AFFIRMED.
 
 
 24
 JERRY E. SMITH, Circuit Judge, concurring in part and dissenting in part:
 
 
 25
 I fully concur in Parts III and IV of the majority's opinion holding that the evidence supports the verdict and that comparative negligence is applicable to the facts of this case under Louisiana law. However, I respectfully dissent from Part II of the opinion. There are dangerous ramifications in its holding that resubmission of the verdict form to enable the jury to reconsider its answers was within the sound discretion of the trial judge. Believing that the answers were reconcilable as a defense verdict, and that the seventh amendment mandates their reconciliation as such, I would reverse and render judgment for the defendant without reaching whether comparative negligence is applicable here.
 
 I.
 
 26
 The seventh amendment guarantees the right to a jury fact-finding in civil trials. When the right has been invoked, the trial judge's formal role in the fact-finding procedure is reduced to the largely ministerial task of delivering the charge, which assists and guides the jury. At this stage in the trial, however, the potential for the judge to exert subliminal, informal influence on the jury is great. The ceremony of trial has socialized the jury to defer to the Solomon-wise majesty of the trial judge as an impartial dispenser of justice. As we recently noted,
 
 
 27
 [t]he trial judge is a potent figure indeed. His instructions are lethal. He can communicate his attitude in a thousand ways from a cocked eyebrow to a sideways glance. Those will not be of record. They are not reviewable. Trial judges are disciplined ultimately only by their good faith and integrity and by an occasional reminder from their appellate brethren to be constantly vigilant of their power.
 
 
 28
 Perricone v. Kansas City S. Ry., 704 F.2d 1376, 1378-79 (5th Cir.1983).
 
 
 29
 When a trial judge resubmits the completed verdict form to the jury because its answers to the special interrogatories appear inconsistent, the risk of a coerced verdict is substantial, even though the record may be unreflective of anything suggestive in the manner of resubmission. The fact of the resubmission itself may very well communicate to the jury that the trial judge regarded its findings unjust. The jury may then act not to reconcile the inconsistency but to revise the verdict in accord with its collective perception of the judge's attitude toward the case.
 
 
 30
 The resubmission may also communicate to the jury the legal effect of its answers and thus facilitate any impulse it may have to "do justice" in the case. Of course, to the extent the jury is moved by such influences to disregard its institutional role of finding the facts on the basis of the evidence presented at trial, the command of the seventh amendment is violated.
 
 
 31
 Although our circuit has long recognized that inconsistent special verdict answers may be resubmitted for jury reconciliation, we nonetheless have stated that the seventh amendment "should not normally justify 'reconsideration' of those answers ..." Perricone, 704 F.2d at 1379. Until today, we have never afforded a trial court "wide discretion" to decide whether the answers are in fact inconsistent. Rather, the resubmission procedure has been hedged in prophylactic safeguards, precisely because of the difficulty of detecting a violation in the record, and we have always viewed resubmission as proper only in certain exceptional circumstances: "[T]he Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." Id. (quoting Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir.1973)). See also Nance v. Gulf Oil Corp., 817 F.2d 1176, 1178 (5th Cir.1987).
 
 
 32
 Our standard for reviewing a trial court's resubmission of a special verdict has evolved as a logical analogue to our more well-refined standard for reviewing a judgment entered upon a verdict claimed on appeal to be irreconcilably inconsistent. Both classes of cases share the same premise that the seventh amendment right to a jury trial subsumes the right to a reconcilable verdict, and both classes of cases have employed the same test for determining whether jury answers to special verdicts are inconsistent:
 
 
 33
 This court has stated that the test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict.
 
 Griffin v. Matherne, 471 F.2d at 915.[1]
 
 34
 In applying this test, we have acknowledged a constitutional requirement "to make a concerted effort to reconcile apparent inconsistencies if at all possible." Mercer v. Long Mfg. N.C., Inc., 665 F.2d 61, 65 (5th Cir.1982) (citing Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962), and Griffin v. Matherne ). If reconciliation is possible, then it is reversible error for a trial court to have entered judgment on a resubmitted verdict. See McCollum v. Stahl, 579 F.2d 869, 870-71 (4th Cir.1978), cert. denied, 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979) (construed and approved in Perricone, 704 F.2d at 1380).[2]
 
 
 35
 The basic question in the instant case, then, is whether it is possible to create a consistency between the answers contained in the verdict before the trial court resubmitted it. This case went to the jury on the following questions and reappeared the first time with the following responses:
 
 Interrogatory No. 1 :
 
 36
 Has plaintiff, Michael Lynn Richard, established by a preponderance of the evidence:
 
 
 37
 a) That the Firestone multipiece rim was defective?
 
 Yes X No
 
 38
 b) That the injury plaintiff suffered was caused by a defective condition in Firestone's rim and such injury might reasonably have been anticipated by the manufacturer?
 
 Yes No X
 
 39
 c) There was actual damage to plaintiff's person?
 
 Yes X No
 
 40
 If your answer to A or B is "No" go no further.
 
 
 41
 If your answer to A and B is "Yes" then you must answer one or more of Interrogatory No. 2 a-d "Yes."
 
 Interrogatory No. 2 :
 
 42
 a) Is the Firestone multipiece rim assembly defective because the risk of hazards of the product outweighs the utility of the product?
 
 Yes No X
 
 43
 b) Is the Firestone multipiece rim assembly defective in design because alternative products were available to serve the same needs with less risk of harm?
 
 Yes No X
 
 44
 c) Is the Firestone multipiece assembly defective because there was a feasible way to design the product with less harmful consequences?
 
 Yes No X
 
 45
 d) Is the Firestone multipiece rim assembly defective because Firestone failed to adequately warn about the dangers of the product and the methods of avoiding those dangers?
 
 Yes X No
 
 46
 Interrogatory No. 3 :Was the fault or negligence of the plaintiff, Michael Lynn Richard, a cause of his injury?
 
 Yes X No
 Interrogatory No. 4 :
 
 47
 Express in terms of a percent, the degree of the parties' fault or negligence.
 
 
 48
 Plaintiff 90%
 
 
 49
 Defendant 10%
 
 
 50
 Total 100%
 
 
 51
 (Note, the percentages above must total 100%).
 
 Interrogatory No. 5 :
 
 52
 In terms of dollars, without reducing this damage figure by any percentage of negligence of which you may have found plaintiff guilty, how much in total damages did the plaintiff sustain as a result of the accident?
 
 
 53
 a) Injury, pain, disability, disfigurement, loss of capacity for enjoyment of life.
 
 
 54
 $150,000
 
 
 55
 b) Medical expenses.
 
 
 56
 $200,000
 
 
 57
 c) Lost earnings, lost earning capacity.
 
 
 58
 $279,000
 
 
 59
 (Fill in each blank with a dollar amount or with a "0" if you find no damages for a particular category.)
 
 
 60
 Manifestly, the jury found that the rim was defective (Interrogatory 1(a)) but that Richard's injury was not proximately caused by the defect (Interrogatory 1(b)). Disregarding its instruction not to proceed further if it found either no defect or no proximate cause, the jury went on to express the degree of Firestone's fault in terms of a ten percent figure (Interrogatory 4).
 
 
 61
 Whether resubmission was proper, then, depends upon whether it is possible to reconcile a finding of comparative fault with a finding of no proximate cause. Stated alternatively, does a finding of comparative fault necessarily imply a finding of proximate cause? If it does not, then the trial court should have entered judgment exonerating Firestone on the first set of answers.
 
 
 62
 In attempting to reconcile special verdicts, the court must also look to the instructions given the jury therein. Griffin, supra; Mercer, supra. As to the definition of "fault," the trial judge instructed the jury that "the plaintiff must establish by a preponderance of the evidence that the defendant has engaged in sub-standard conduct and is thus, in legal terms, 'at fault.' " Fault, therefore, as defined in the instruction, does not contain a causation component. Fault simply equates to substandard behavior, which may or may not have been the legal cause of plaintiff's injury.[3] The conceptual separation of fault and causation is further borne out by the logical structure of Interrogatory No. 3, which expressly assumes Richard's fault and then questions the jury as to whether such fault was the cause of Richard's injury.
 
 
 63
 Accordingly, there is an easily-found view of this case that the jury's allocation of fault to Firestone is entirely consistent with its finding that Firestone did not legally cause Richard's injury. The jury could have seen the fault allocation issue as asking for a comparison--in percentage terms--of the extent to which each party's behavior was substandard, or "at fault." Firestone was at fault because it had sent a product into the stream of commerce without giving warning of the dangers inherent in its foreseeable use and without including instructions regarding use of the product in a way calculated to minimize those dangers.
 
 
 64
 Richard, however, was already aware of the dangers of which Firestone was under a duty to warn and of the procedures for avoiding them. Since he failed to follow those procedures in assembling the rim, his fault was found to be proportionately much greater than Firestone's. Furthermore, by viewing Richard's fault as a superseding cause of his own injury, the jury could consistently find no causal link between Firestone's fault--its failure to warn--and Richard's injury.
 
 
 65
 The majority holds that the trial court acted within its discretion in drawing the permissible inference of proximate cause from a finding of comparative fault. In effect, the court is retreating from its previous recognition of a seventh amendment right to judgment on a verdict where there is "some view of the case that makes the jury's answers consistent." Nance, 817 F.2d at 1178.
 
 
 66
 This rule is turned on its head by affording the trial judge "wide discretion" to resubmit a verdict whenever, instead, there is some view of the case that makes the jury's answers inconsistent, or even worse, when something about the jury's answers alerts the trial judge to the possibility that the jury might have been confused in rendering its verdict. Although I am in full agreement with the majority that the trial judge is in a much better position than we to evaluate whether the answers reflect confusion or uncertainty, I believe, as I have pointed out, that the potential for off-the-record interference with the jury's constitutional function is too great to permit the type of free-wheeling procedure which the majority today endorses.
 
 II.
 
 67
 Additionally, as a second, independent ground for reversing and rendering judgment on the jury's first verdict, I would hold that anytime an inconsistency is created by a jury response given in violation of a proceed-no-further instruction, that response should be treated as mere surplusage and disregarded. The proceed-no-further instruction should protect a defendant's right to a favorable finding on a liability issue by preventing juries from inconsistently answering apportionment or damage issues that have been structured to assume the existence of the requisite elements of liability. See White v. Grinfas, 809 F.2d 1157 (5th Cir.1987).[4]
 
 
 68
 To resubmit the verdict after the jury has disregarded the court's instruction is unfair to the defendant. If, for example, the jury is unaware of the legal effect of its answers at the time of first submission but is predisposed to award the plaintiff damages, then there is always a substantial possibility, so long as the jury remains uninformed, that it will answer a liability issue favorably to the defendant. Afterwards, it may create an "inconsistency" by answering an issue that requires it to state the amount of damages necessary to compensate the plaintiff for the defendant's actionable conduct.
 
 
 69
 When the inconsistent verdict is then resubmitted with renewed emphasis by the judge that damages cannot be assessed unless the jury "reconsiders" its answer on the liability issue, the risk of an informed sympathy verdict is great. This risk should not fall on the defendant when the jury creates an inconsistency in violation of the court's instructions. In other words, it is wrong to reward one party (in this case, the plaintiff) and penalize the other party (in this case, the defendant) for the sole reason that the jury disobeyed the clear instructions given by the court.
 
 
 70
 For the foregoing reasons, I would reverse and render judgment for the defendant.
 
 
 
 [1]
 The jury went on to find the Firestone rim defective based on its failure to warn; apportion Firestone's fault at ten percent and Richard's at ninety percent; and assess Richard's damages at $629,000
 
 
 [2]
 We also have considered Richard's contention that the trial court's instruction on normal use was erroneous. Because Richard did not object to the charge he did not preserve this point for appeal
 
 
 [1]
 Judge Godbold's opinion in Griffin v. Matherne is the leading case in this circuit for determining whether judgment has been improperly entered on an inconsistent verdict. For resubmission cases quoting the Griffin test as set out above, see Perricone, 704 F.2d at 1379; Fugitt v. Jones, 549 F.2d 1001, 1005 (5th Cir.1977)
 
 
 [2]
 Before today, the only case from our circuit to review a trial court's decision to resubmit a verdict form containing answers not legally inconsistent was Perricone v. Kansas City S. Ry. There, we flatly rejected affording the trial court discretion in such circumstances, 704 F.2d at 1379 (distinguishing Morrison v. Frito-Lay, Inc., 546 F.2d 154 (5th Cir.1977)), and held that the defendant had a constitutional right to the verdict as returned after the original submission. Id. at 1380. The defendant, however, was held to have waived that right by failing to object contemporaneously to the resubmission. My review of the record in the instant case reveals that Firestone entered a timely objection and requested the judge to enter judgment on the original verdict
 Authorities cited by the majority are not to the contrary. In Nance v. Gulf Oil Co., we did not defer to the trial court's discretion to determine the existence of an inconsistency. Rather, we ourselves attempted to reconcile the verdict, concluding that "our imagination does not stretch so far as to harmonize the findings that Gulf was neither negligent nor strictly liable with the finding rendered against Gulf on the issue of comparative fault. Because the answers in the first verdict were irreconcilable, there was no seventh amendment violation by the resubmission of the verdict form." 817 F.2d at 1178 (emphasis added). Likewise in Landry v. Offshore Logistics, Inc., 544 F.2d 757, 761 (5th Cir.1977), resubmission was proper because the inconsistency was irreconcilable: The jury both had found the plaintiff not contributorily negligent and, in a subsequent issue, had assessed the degree of his contributory negligence at 75%. Further, as in Perricone, the defendant made no objection when the jury was sent back for further deliberations. Id.
 
 
 [3]
 It is not unusual for a defendant to be found negligent, because of substandard behavior, but to be completely exonerated because its negligence was not the cause of the plaintiff's injury. In Cooper v. Marriott Corp., 851 F.2d 1419 (5th Cir.1988) (per curiam), for example, the plaintiff sued a hotel for injuries he sustained as a result of an assault in the hotel's parking garage. The jury concluded that the hotel was negligent in that its security system was inadequate. But it also answered that such negligence was not the cause of plaintiff's injury, based upon the hotel's assertion that because of the quickness of the attack and plaintiff's proximity to an entrance, even adequate security measures would not have prevented the attack. Rejecting plaintiff's argument that the jury's answers were inconsistent, we affirmed the judgment rendered in favor of the hotel
 
 
 [4]
 In White, we confronted a judgment which, appellant contended, had been entered on the basis of irreconcilable answers to special interrogatories. The problem was caused by the jury's failure to abide by a proceed-no-further instruction. This instruction directed the jury not to answer further questions if it found that the counterclaim-defendants did not know of structural defects they had allegedly concealed. Because all questions subsequent to Question 3 were predicated on an affirmative response to that question--and thus, expressly assumed that the counterclaim-defendants had possessed culpable knowledge--the subsequent answers necessarily conflicted with Question 3
 Acknowledging our seventh amendment duty "to reconcile the answers, if possible, in order to validate the jury's verdict " (not the lower court's judgment), we devised a rule "[t]o effectuate best the intent of the jury": "[I]f the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of legal issues, on review we must ignore the jury's necessarily conflicting answers to other questions." Id. at 1161 (emphasis added).
 From this premise, the majority concludes that "in White we recognized the broad discretion the district court enjoys to refuse to consider interrogatories answered in violation of the court's instructions." This conclusion is erroneous, however, because it wrongly assumes that our seventh amendment obligation to reconcile jury answers whenever possible does not apply with equal force when the district court does not reconcile them. Moreover, I find nothing in White to indicate that a district court has discretion to consider extraneous answers returned by a jury in violation of a proceed-no-further instruction.