479 So.2d 961 (1985)
Celie T. KAPLAN, Plaintiff-Appellee,
v.
Insured LLOYDS INSURANCE COMPANY, Scott Christianson and Lafayette Parish Sheriff's Department, Defendant-Appellant (Lloyds).
No. 84-883.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*962 Roy, Forrest and Lopresto, L. Albert Forrest, Lafayette, for defendant-appellant.
Paul J. Guilliot, Lafayette, for plaintiff-appellee.
*963 Before FORET, YELVERTON and KING, JJ.
FORET, Judge.
This suit arises out of an accident involving an automobile owned and operated by plaintiff, Celie Kaplan, and a patrol car owned by defendant, Lafayette Parish Sheriff's Department, and operated by defendant, Scott Christianson. Plaintiff's petition also named as a defendant the sheriff's department's insurer, Lloyds Insurance Company. After trial on the merits, the trial court rendered judgment in favor of plaintiff and against defendant, Lloyds Insurance Company, for $20,580. Defendant, Lloyds Insurance Company, appealed and plaintiff answered the appeal. This appeal presents us with several issues:
(1) Whether the statutory exception and privilege granted to emergency vehicles under LSA-R.S. 32:24 precluded a finding that defendant Christianson was guilty of any actionable negligence;
(2) Whether the trial court erred in failing to find plaintiff contributorily negligent; and
(3) Whether the trial court's award of general damages was so low as to constitute an abuse of discretion.

FACTS
On the morning of May 22, 1982, plaintiff, Celie Kaplan, had just left her home in Lafayette, Louisiana. Mrs. Kaplan, who was driving her 1980 Pontiac, turned onto Johnston Street, which is a four-lane thoroughfare with a "turning" lane in the center. Almost immediately, plaintiff crossed over into the inside lane and entered the turning lane in anticipation of making a left-hand turn into a service station located at the corner of Johnston Street and St. Julian Street. At the same time, a Lafayette Parish Sheriff's patrol car driven by Deputy Scott Christianson was approaching from the opposite direction.
Minutes before, Deputy Christianson had been several miles away patrolling the area around Carencro High School. He had received a radio call informing him that a silent alarm had gone off at the Rimrock Saloon, a nightclub located on Johnston Street just outside the Lafayette city limits. Another sheriff's department unit had already been dispatched as the primary unit. Deputy Christianson was to be the backup. The radio dispatcher ordered the deputy to proceed to the nightclub under "Code 2" which required the use of flashing lights with only intermittent use of the patrol car's siren. The deputy took the Carencro Highway into Lafayette until he reached Johnston Street. He turned onto Johnston and headed south toward Abbeville, traveling at a high rate of speed.
It was a Saturday morning and the traffic on Johnston Street was light. As Deputy Christianson approached the intersection of Johnston and St. Julian, he became aware of Mrs. Kaplan's car which was stopped in the turning lane just across the intersection. The deputy did not notice any other cars in the vicinity. The traffic light at the intersection was green and presented no problem. As Deputy Christianson was later to testify, plaintiff's car was the only potential threat.
Suddenly Mrs. Kaplan's car began to turn out of the center lane, across the lane in which the deputy's car was traveling. The deputy applied his brakes, but the speed of the patrol car prevented him from braking in time. The patrol car struck the back quarter panel of Mrs. Kaplan's car, sending it into a nearly 360% turn, which ended when the car came to a stop in a nearby parking lot.
The deputy was apparently unhurt. Mrs. Kaplan was taken to the emergency room of Lourdes Hospital. After examination, the emergency room physician diagnosed her as having a fracture of the clavicle and of a rib. Plaintiff also suffered a number of bruises. For the next ten weeks, plaintiff was cared for by relatives, and for the first three weeks after the accident, plaintiff was confined to bed.

STATUTORY EXCEPTION AND PRIVILEGE GRANTED EMERGENCY VEHICLES
The driver of an authorized emergency vehicle is permitted by statute to *964 exceed the speed limit when responding to an emergency call provided that the vehicle is making use of an audible or visual signal. LSA-R.S. 32:24[1]. Nevertheless, the driver of an emergency vehicle is not relieved of the duty to drive with due regard for the safety of others. The qualified privilege afforded by R.S. 32:24 does not shield the operator of an emergency vehicle who breaches the duty to drive with due regard for the safety of others from liability arising out of his misconduct. Cassity v. Williams, 373 So.2d 586 (La.App. 3 Cir. 1979). Johnny Mouton, an eyewitness to the accident, testified that just before the collision the patrol car was traveling in excess of 75 miles per hour. Although Deputy Christianson testified that he thought he was traveling between 50 and 60 miles per hour, he displayed some uncertainty in this regard. The trial court was impressed with the testimony of Mr. Mouton and seems to have accepted his testimony concerning the speed of the patrol car. The trial court seems to have found, and we concur in that finding, that Deputy Christianson was driving at an excessive rate of speed even for an emergency vehicle responding to an emergency call. The Lafayette Sheriff's Department's own policy does not allow the operation of a patrol car at more than 20 miles per hour above the posted speed limit. The posted speed limit on Johnston Street at the place where the accident occurred is 40 miles per hour. By traveling more than 35 miles per hour above the posted limit, Deputy Christianson breached his duty to drive with due regard for the safety of others, and this breach of duty was, at least in part, the cause of plaintiff's injuries.

PLAINTIFF'S CONTRIBUTORY NEGLIGENCE
The trial court found that plaintiff was free of fault. Despite having given due deference to the trial court's factual findings, we cannot agree that plaintiff was free of fault. Although Deputy Christianson's excessive rate of speed was a cause of the accident, the inattentiveness of plaintiff was also a contributing factor.
A left turn is generally a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made in safety. Agency Rent-A-Car, Inc. v. Hamm, 401 So.2d 1259 (La.App. 1 Cir.1981). A high degree of care is required of a left-turning motorist. A left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he is free of negligence. Bennett v. United States Fidelity & Guaranty Company, 373 So.2d 1362 (La.App. 1 Cir.1979), writ denied 376 So.2d 1269 (La.1979).
In the present case, plaintiff failed to exercise the high degree of care which the law required of a left-turning motorist. Plaintiff testified that she did not see the patrol car before the accident. It is undisputed that Johnston Street is straight at the point where the accident occurred. Although there is a dip in the road, this dip was not sufficiently prominent to prevent plaintiff from seeing the oncoming patrol car. Although the eyewitness, Johnny Mouton, testified that he did not notice the patrol car's lights before the accident, he admitted that they were on immediately following it. On the other hand, the deputy testified unhesitatingly that he had turned his flashing lights on immediately *965 after receiving the burglary call. Plaintiff did not claim to have seen the patrol car and misjudged its speed. Rather, she testified that she never saw the car at all. Plaintiff should have seen the patrol car, and her failure to do so was negligence on her part. Having failed to notice the patrol car, plaintiff made a slow left turn across the path of the oncoming car. Plaintiff's inattention and her subsequent actions were a breach of her duty as a motorist.
Comparative fault requires the allocation of the percentage of fault to the responsible parties. In making this allocation of fault, we must consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985); Veazey v. Parish of Avoyelles, 476 So.2d 1057 (La.App. 3 Cir.1985). In assessing the nature of the conduct of the parties, some of the factors which may influence the court are:
"... (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties." Watson, at page 974.
The conduct of Deputy Christianson, specifically his driving at an unreasonably high rate of speed, appears to have been a more conscious choice than plaintiff's turning in his path, which must have been the result of inadvertence. On the other hand, if plaintiff had not been inattentive and had seen the approaching patrol car, she might have avoided the accident altogether. The deputy was on an emergency call, providing backup in the investigation of what appeared to be a burglary in progress. The potential danger to the deputy's fellow officers and the public at large made it important that the deputy arrive expeditiously. Of course, that arrival must be accomplished expeditiously, but not in a reckless fashion which endangers the lives of innocent motorists and pedestrians. Having considered these factors, we conclude that fault should be apportioned 40% to plaintiff and 60% to defendant.

QUANTUM
Plaintiff contends that the trial court abused its discretion by awarding an insufficient amount in general damages. The trial court is vested with great discretion with regard to the quantum awarded. We discern no abuse of discretion.
Plaintiff was 71 years old at the time of the accident. As a result of the accident, she suffered a fracture of the clavicle and the fracture of one of her ribs. Plaintiff was treated in the hospital emergency room. The emergency room doctor placed plaintiff in a harness to treat her for her fractured clavicle. Plaintiff was not hospitalized, but was taken care of by two relatives who are registered nurses. For the first ten days after the accident, plaintiff was incapacitated and in need of complete nursing care. Plaintiff was confined to bed for three weeks and did not return to her home until seven weeks after the accident. Although plaintiff still suffered some pain at the time of trial, she is not incapacitated and appears to be able to engage in most day-to-day activities. Although there was testimony that plaintiff has not been as active since the accident, this testimony was, at times, vague and, taken as a whole, did not indicate that plaintiff's injuries had significantly affected her quality of life.[2] We think that the trial court's award of *966 $20,580 in general damages was clearly adequate.
In accordance with our apportionment of the fault, we must reduce plaintiff's recovery by 40%. Accordingly, the trial court's award of $20,580 will be reduced to $12,348.

DECREE
For the foregoing reasons, the judgment of the trial court is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, CELIE T. KAPLAN, and against defendant, LLOYDS INSURANCE COMPANY, for $12,348, with legal interest thereon from date of judicial demand until paid. In all other respects, the judgment of the trial court is affirmed.
Costs at the trial level and on appeal are assessed 60% to defendant, Lloyds Insurance Company, and 40% to plaintiff.
AMENDED IN PART, AFFIRMED AS AMENDED, AND RENDERED.
NOTES
[1] LSA-R.S. 32:24 provides in pertinent part:

"A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
. . . . .
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
. . . . .
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle."
[2] For example, there was testimony that although plaintiff could use a vacuum cleaner, she had to use a lightweight electric broom rather than a full sized vacuum cleaner.