Henry WINSTON and Delores Winston, Plaintiffs-Appellees,

and

Southern Farm Bureau Casualty Insurance Company, Intervenor-Appellee,

v.

INTERNATIONAL HARVESTER CORPORATION, Defendant-Appellant.

No. 85–3230.

United States Court of Appeals, Fifth Circuit.

June 11, 1986.

Rehearing Denied July 14, 1986.

C.G. Norwood, Jr., Michael M. Noonan, New Orleans, La., for defendant-appellant.

Sherman F. Raphael, Owen J. Bradley, New Orleans, La., for plaintiffs-appellees.

Michael R. Guidry, New Orleans, La., for Winston.

William G. Argeros, New Orleans, La., for Southern Farm Bureau Cas. Ins. Co.

Before GOLDBERG, HILL and JONES, Circuit Judges.

IRVING L. GOLDBERG, Circuit Judge:

We are called upon in this diversity case to grapple again with the application of comparative fault to strict liability claims under the principles announced by the Louisiana Supreme Court in *Bell v. Jet Wheel Blast,* 462 So.2d 166 (La.1985).[1] Appellee Winston's accident occurred while he was driving his employer's 1969 International Harvester tractor on a dirt road on a sugar plantation at the end of his work day. For reasons we may never really know, the tractor left the road and rambled into a sugar cane field where it encountered head-on furrows well over a foot deep. The rough ride threw Winston from the tractor and under the wheels of either the tractor or the wagon it was pulling. The tractor continued on until it came to rest in a bayou. Winston was left bloodied and beaten in the cane field with a future holding at least $75,000 in medical expenses, which have been paid so far by his employer's workmen's compensation insurance carrier, intervenor Southern Farm Bureau Casualty Insurance Company.

A jury found that appellant International Harvester had manufactured a defective tractor and that the defect was a cause of Winston's accident. This defect consisted of the tractor's lack of a Rollover Protection System (ROPS) and/or wheel fenders. A ROPS, which consists of a cage-like structure around the driver and includes a seat belt, could have prevented Winston's sudden ejection from the tractor. Fenders could have prevented Winston from being run over by the tractor wheel. There was no allegation or proof that the tractor was

---

1. During the same sitting, this panel also heard argument in *Robertson v. Superior PMI, Inc.,* 791 F.2d 402 (5th Cir.1986) (involving the same legal issue).

defective in any other way, or that any defect caused him to leave the road.

The jury also found that Winston was negligent, and that this negligence contributed 97% to his injuries. The jury might have based this finding on the belief that one simply cannot drive off a road, in the absence of any mechanical defect or malfunction, without breaching a driver's duty of care. The evidence showed that Winston was the only driver that day to take that otherwise well travelled road back to the tractor shed, and that he may have done so to see his garden, which rested within a stone's throw from where the tractor left the road. The jury may also have reasonably concluded that Winston was travelling at an unsafe rate of speed, and that his efforts to stop the tractor once it left the road were less than adequate.

Finally, the jury found that $300,000 would compensate Winston for his injuries. The district court then had to decide whether to reduce the award by 97%, or whether *Bell v. Jet Wheel Blast* precluded the application of comparative fault. Deciding that the facts in *Bell* were sufficiently similar to those before him, the trial judge found that, as in *Bell*, comparative fault was inapplicable, and he awarded Winston the full $300,000. We affirm the judgment against International Harvester, but reduce it to $9,000 in proportion to Winston's 97% negligence.

## DISCUSSION

### I.

■ The principal question in this case is whether Winston's fault should be applied to reduce proportionately International Harvester's strict liability for the accident caused by its defective tractor. In *Bell v. Jet Wheel Blast*, the Louisiana Supreme Court decided that "pure comparative fault principles would seem to coincide with and further the goals of products liability doctrine in some cases." *Id.* at 171. The Court then set out the following broad rule to guide courts in the application of comparative fault:

Where the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those types of cases in which [the reduction] does not serve *realistically* to promote careful product use *or* where it *drastically* reduces the manufacturer's incentive to make a safer product.

*Id.* at 171–72 (emphasis added). The rule therefore seems to be that a court will introduce comparative fault to reduce a strict liability judgment when the consequent reduction of the award will *realistically* promote user care without "*drastically* reducing" the manufacturer's incentive to make a safer product.

Applying this rule, the Court concluded that the application of comparative fault to the facts in *Bell* would be inappropriate:

The plaintiff was injured while performing a repetitive operation with a defective industrial machine as required by his employer. His hand got caught in the chain and sprocket drive of the conveyor system of the machine because of the lack of an adequate guard at the particular place on the drive that the injury occurred. His ordinary contributory negligence in combination with the machine's defect caused the accident and injury. Under these circumstances, the application of comparative fault would not serve to provide any greater incentive to an employee to guard against momentary neglect or inattention so as to prevent his hand from being mangled by machinery. Reduction of the plaintiff's award in this type of case would only tend to defeat the basic goals of strict products liability doctrine by reducing economic incentive for product quality control and by forcing the injured individual to underwrite a loss himself which could be more efficiently distributed by the manufacturer through insur-

ance and price adjustments. *Cf. Suter v. San Angelo Foundry and Machine Co.,* 81 N.J. 150, 406 A.2d 140 (1979) ("The imposition of a duty on the manufacturer to make the machine safe to operate whether by installing a guard or ... by making it inoperable without a guard, means that the law does not accept the employee's ability to take care of himself as an adequate safeguard of interests which society seeks to protect." 406 A.2d at 148); *Bexiga v. Havir Manufacturing Corp.,* 60 N.J. 402, 290 A.2d 281 (1972) ("The asserted negligence of plaintiff ... was the very eventuality the safety devices were designed to guard against." 290 A.2d at 286).]

*Id.* at 172 (footnote omitted).

■ We believe that comparative fault is applicable to the facts now before us. Its application will realistically promote careful tractor use without drastically reducing the manufacturer's incentive to make a safer tractor. We note, however, that the test provided by the Louisiana Supreme Court is problematic at best. Rather than delineating the boundaries of comparative fault with clearly identifiable categories of conduct,[2] the court's test requires an "incentive analysis" that, while reasonable in theory, creates difficult if not impossible problems in fact.

### A.

We look first at the effect that the application of comparative fault has on the tractor driver's incentive to drive the tractor safely. Where the reduction occasioned by the application of comparative fault "does not serve *realistically* to promote careful product use," 462 So.2d at 172 (emphasis added), *Bell* dictates that comparative fault has no application.

Appellee has diligently sought to show that this case is on all fours with *Bell.* He argues that, like the plaintiff in *Bell,* he was "injured while performing a *repetitive* operation with a defective industrial machine *as required by his employer;*" his "*ordinary contributory negligence* in combination with the machine's defect caused the accident and injury;" and that "[u]nder those circumstances, the application of comparative fault would not serve to provide any greater incentive to an employee to guard against *momentary neglect or inattention....*" *Id.* (emphasis added). He stresses in particular his status as an employee and the *Bell* court's reluctance to "accept the employee's ability to take care of himself as an adequate safeguard of interests which society seeks to protect." *Id.*

■ We certainly share his concern.

A worker in an industrial setting has little choice but to use the machinery supplied by his employer; as a group, such workers therefore have very limited ability to exchange appropriate economic signals with the manufacturers of defective machines. Furthermore, a worker who must use dangerous machinery for many hours of the week has strong immediate incentives to avoid injuring himself *and* will have special difficulties in maintaining the virtually constant vigilance that would preclude "victim fault." *Jones v. T.G. & Y. Stores Co.,* 775 F.2d 663, 665 (5th Cir.1985). However, we do not believe that the Louisiana Supreme Court, in pointing out the difficulties in applying comparative fault in the employment area, meant to prevent its application to all accidents involving employees. As the Court in *Bell* pointed out, "the question of whether other classes of cases fall within the category to which comparative fault

---

2. For example, the Court wrote: "Of course, the exception outlined above does not include an employee who deliberately injures himself. There may be other instances where the ordinary contributory negligence of the plaintiff will not result in a reduction of his recovery. For example, Florida and Illinois apply comparative negligence principles to strict liability, but neither state allows a plaintiff's failure to discover or guard against a defect to be compared as a damage-reducing factor." *Id.* at 172. While these categories may very well be subsumed under the Court's "incentive analysis," they certainly do not describe the limits of that analysis.

may apply must be decided on a case-by-case basis." 462 So.2d at 172. Each case necessarily requires an ad hoc examination of the realities of the employee's working conditions and the incentives available to her.

We believe that the incentive analysis in this case is furthered by *Holmes v. State Through Department of Highways*, 466 So.2d 811 (La.App. 3d Cir.1985). The *Holmes* court found that reducing a negligent motorist's recovery, where the negligence "amounts to more than 'simple inadvertance,' ... will ... serve as an incentive to other motorists for safe highway travel." *Id.* at 824. *See also Hayes v. State Through Department of Transportation and Development*, 467 So.2d 604, 608–09 (La.App.3d Cir.1985); *Kaplan v. Lloyds Insurance Company*, 479 So.2d 961, 964–65 (La.App.3d Cir.1985); *Ledbetter v. State Department of Transportation & Development*, 482 So.2d 1035 (La.App.3d Cir. 1986).

Although the analogy between a tractor driver on a dirt road and a motorist on a state highway is imperfect, it more closely describes his situation than does a comparison to a worker on an assembly line. While it is too much to ask that a worker on a dangerous assembly line "maintain the virtually constant vigilance that would preclude 'victim fault,'" *Jones, supra*,[3] we think it not too much to ask that a tractor driver keep his properly functioning tractor on the road. Application of comparative fault is particularly appropriate here because appellee's negligence amounted to more than "simple inadvertance" or "momentary neglect." The evidence showed that Winston was travelling at close to the tractor's top speed when he left the road. More probably than not, he chose to look at his garden, which lay on the left side of the road, rather than keep his eye on the road, which would have probably prevented him from leaving the road on its right side. Accordingly, we believe that the application

of comparative fault will realistically promote careful tractor use.

### B.

Our conclusion that the application of comparative fault in this case will realistically promote safe product use brings us to the second and, as it turns out, shorter step of the inquiry: whether the application of comparative fault "drastically reduces the manufacturer's incentive to make a safer product." This problem appears at first blush to require a problematic balancing of the manufacturer's costs of actually producing and marketing the product against any anticipated post-production reduction of the cost of accidents. The details of this balancing are beyond our ken.

■ One thing, however, is clear. As a general matter, the application of comparative fault will *not* drastically reduce the manufacturer's incentive to make a safer product in those cases in which the manufacturer "cannot reasonably rely on careless use by future plaintiffs to reduce its economic liability." *Nicholas v. Homelite Corporation*, 780 F.2d 1150, 1154 (5th Cir. 1986). Also as a general matter, where the application of comparative fault *realistically* promotes careful product use, the manufacturer cannot reasonably rely on careless use by future users to reduce its economic liability. To be sure, there will always be careless users to some degree, but the conclusion that realistic incentives do exist necessarily implies that there will be a substantial number of non-negligent users. If realistic incentives mean anything, they mean that they act in fact to encourage careful product use. Therefore, a drastic reduction in the manufacturer's incentive to make a safer product will not occur, because the presence of realistic incentives for careful product use prevents the manufacturer from reasonably relying on careless use by future users.

Because the application of comparative fault in this case serves realistically to

---

3. *See. e.g., Robertson v. Superior PMI, Inc.*, 791 F.2d 402 (5th Cir.1986) (worker's failure to use safer alternative operating procedure does not trigger application of comparative fault).

promote careful product use, holding Winston responsible for the consequences of his share of the fault will therefore not drastically reduce International Harvester's incentive to make a safer tractor. Accordingly, we believe this case is an appropriate one for the application of comparative fault.

## II.

 International Harvester also contends that the trial court's charge regarding industry custom wrongly failed to limit the jury's consideration to industry custom in 1969, the year of the tractor's manufacture. This allegation is meritless.

The court's charge reads as follows:

Now, you have heard evidence that it was the custom of tractor manufacturers not to provide rollover protection structures, seat belts or fenders as standard equipment. The custom of an industry is not binding upon you, but it may be considered together with all the other evidence in your determination of whether the tractor was defective.

The way that something is ordinarily done by an industry is not necessarily the way that it ought to be done. It is entirely up to you to decide whether this tractor was defective, considering the industry custom and all the evidence in the case.

Rec.Vol. V, at 57. Although the charge does not explicitly state that the custom referred to was that in 1969, it is clear from context, the evidence presented by both sides, and counsel's arguments that the charge refers to the custom in 1969. "[I]n view of the allegations of the complaint, the evidence presented and the arguments of counsel," *Coughlin v. Capitol Cement Company*, 571 F.2d 290, 300 (5th Cir.1978), we conclude that the jury understood the issues and was not misled by the charge. *Id.*

## CONCLUSION

We conclude that the application of comparative fault in this case rings true under *Bell*. The judgment against International Harvester is affirmed as to liability, but the judgment is modified so as to reduce the amount thereof to $9,000 to reflect Mr. Winston's 97% negligence.

JUDGMENT MODIFIED and, as modified, AFFIRMED.