826 F.2d 381
 Prod.Liab.Rep.(CCH)P 11,557
EMPLOYERS NATIONAL INSURANCE COMPANY, Plaintiff-Appellee
Cross-Appellant,
v.
Herman CHADDRICK and Evelyn A. Chaddrick,
Intervenors-Appellants Cross-Appellees,
v.
DEERE & COMPANY, Defendant-Appellee Cross-Appellant.
 No. 87-4075
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 8, 1987.
 Guy O. Mitchell III, Ville Platte, La., for appellant.
 Roy & Hattan, L. Lane Roy, Lafayette, La., Caffery, Oubre, Dugas & Campbell, David R. Dugas, New Iberia, La., for appellees.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before RUBIN, HIGGINBOTHAM, and HILL, Circuit Judges.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 Employers National Insurance Company (Employers) instituted this strict liability action in state court in Louisiana seeking recovery from Deere & Company (Deere) for compensation payments made to Herman Chaddrick (Chaddrick) because of injuries suffered by Chaddrick on May 30, 1983, in the course of his employment for Universal Electric Construction Company (Universal Electric). Deere removed the case to federal court based on diversity of citizenship. After the action was commenced, Chaddrick and his wife, Evelyn A. Chaddrick, filed a petition of intervention seeking recovery from Deere for Chaddrick's injuries.
 
 
 2
 The district court found that Chaddrick's injuries resulted in part from a defect in a Deere skidder, that the defect existed at the time of manufacture, and that Chaddrick's damages amounted to $108,432. The court ruled that comparative negligence was applicable under Louisiana law and thus reduced the award by the 60 percent fault it attributed to Chaddrick. As the ultimate award of $43,372.80 was less than the amount paid by Employers to Chaddrick, judgment was entered in favor of Employers and Chaddrick recovered nothing. Chaddrick timely appealed; cross-appeals were then filed by Deere and Employers.
 
 
 3
 Chaddrick, joined by Employers, claims that the district court erroneously applied comparative negligence to this case; that if comparative negligence is indeed applicable, his fault should properly have been calculated to be much lower; and that an insufficient amount of damages were awarded. Chaddrick further claims that the damage award was incorrectly apportioned between him and Employers. Deere claims that there was insufficient evidence to support the district court's finding that the defect in the skidder existed at the time it left Deere's factory. Because we find none of these claims to be meritorious, we affirm the district court's judgment.
 
 I.
 
 4
 On May 30, 1986, Chaddrick was employed as a foreman by Universal Electric. He and a crew of four or five others were stringing electrical lines near Ville Platte, Louisiana. One step in this process involved the use of a Deere 440-C skidder, a tractor with a blade in front and a swivel winch at the rear, to deliver dollies containing electrical lines to utility poles.
 
 
 5
 Chaddrick and his crew had to cross a rice paddy in the course of their work. Because the skidder has only one seat and is not designed to accommodate riders, an aluminum boat pulled from behind the skidder was provided for riders. However, in crossing the rice paddy Chaddrick and the crew chose to ride on the skidder. After the dollies had been dropped off, the crew returned to the point where the rice field was initially crossed in order to repair two breaks in a levee caused by the skidder. As Chaddrick attempted to dismount from the hood of the skidder, he stepped on the front blade. The blade rode up and pinned his foot, causing its injury and permanent disfigurement.
 
 
 6
 The district court found that the operator of the skidder had intentionally lifted the blade in order to cross the levee but that the blade continued to rise after the operator released it. The court attributed this drifting upward of the blade to the fact that the blade control cable was routed in front of the transmission lever box rather than behind it where it was designed to go. The court found that "this incorrect routing was more probably than not the way the cable was routed during manufacture."
 
 II.
 A.
 
 7
 The first and most substantial claim in this appeal is that Chaddrick's fault should not have been applied to reduce proportionately Deere's strict liability for the accident caused by its defective product. The Louisiana Supreme Court in Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), set out a broad guide as to when comparative fault should be applied in strict liability cases:
 
 
 8
 [P]ure comparative fault principles would seem to coincide with and further the goals of products liability doctrine in some cases. Where the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those types of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safer product.
 
 
 9
 Id. at 171-72. This court has interpreted the Bell rule to be "that a court will introduce comparative fault to reduce a strict liability judgment when the consequent reduction of the award will realistically promote user care without 'drastically reducing' the manufacturer's incentive to make a safer product." Robertson v. Superior PMI, Inc., 791 F.2d 402, 407 (5th Cir.1986) (emphasis in original); see also Winston v. International Harvester Corp., 791 F.2d 430, 432 (5th Cir.1986).
 
 
 10
 In looking at the effect of the application of comparative fault upon the user's incentives, this court and the Louisiana courts have distinguished between cases in which the injured party was only "ordinarily negligent" or was engaged in a repetitive activity and was hurt because of "momentary neglect or inattention," see Bell, 462 So.2d at 172, and those instances where the injury resulted from the user consciously placing himself in danger. For example, in Bell the Louisiana Supreme Court stressed that
 
 
 11
 [t]he plaintiff was injured while performing a repetitive operation with a defective industrial machine as required by his employer. His hand got caught in the chain and sprocket drive of the conveyor system of the machine because of the lack of an adequate guard at the particular place on the drive that the injury occurred. His ordinary contributory negligence in combination with the machine's defect caused the accident and injury. Under these circumstances, the application of comparative fault would not serve to provide any greater incentive to an employee to guard against momentary neglect or inattention so as to prevent his hand from being mangled by machinery.
 
 
 12
 Id. Similarly, this court declined to apply comparative fault in Robertson. There we noted:
 
 
 13
 Robertson's employer required him to stand within two feet of an unreasonably dangerous machine for the length of his shift, day in and day out. Plaintiff's expert at trial testified that safety studies since 1900 have recognized that the monotony and routine of an employee's tasks breed a complacency in the employee, who will then tend to ignore danger areas simply because she has previously avoided injury.
 
 
 14
 791 F.2d at 408.
 
 
 15
 On the other hand, this court determined that the Bell rule required comparative fault to be applied in Winston. There the driver of a tractor found to be defective because it lacked a rollover protector or wheel guards was injured after driving off a dirt road and into a sugar cane field. In approving the application of comparative fault we stated:
 
 
 16
 While it is too much to ask that a worker on a dangerous assembly line "maintain the virtually constant vigilance that would preclude 'victim fault,' " we think it not too much to ask that a tractor driver keep his properly functioning tractor on the road. Application of comparative fault is particularly appropriate here because appellee's negligence amounted to more than "simple inadvertence" or "momentary neglect." The evidence showed that Winston was traveling at close to the tractor's top speed when he left the road. More probably than not, he chose to look at his garden, which lay on the left side of the road, rather than keep his eye on the road, which would have probably prevented him from leaving the road on its right side.
 
 
 17
 791 F.2d at 434 (footnote and citation omitted). Likewise, a Louisiana appellate court upheld the application of comparative fault in Harper v. State Farm Mutual Automobile Insurance Co., 484 So.2d 737 (La.App. 1st Cir.1986). In that case the plaintiff was trying to fix a defective battery and was injured when it exploded in his face.
 
 
 18
 It was established at trial that plaintiff had some prior experience with automotive batteries. He was fully aware that batteries contained acid and could explode. Furthermore, plaintiff could not explain why at the time of the accident he was leaning over with his face only three inches from the top of the battery. Plaintiff also admitted that there was nothing preventing him from standing to the side of the truck and reaching in, rather than standing in front and reaching over the battery. Additionally, it was established that there was no pre-arranged signal between plaintiff and his brother for starting the truck once the battery post was reinserted.
 
 
 19
 Id. at 739. In these circumstances, comparative fault was found appropriate.
 
 
 20
 We also recognized in Winston that the appropriateness of comparative fault under Louisiana law depends on the circumstances present in the case at hand. In that regard we stated:
 
 
 21
 As the court in Bell pointed out, "the question of whether other classes of cases fall within the category to which comparative fault may apply must be decided on a case-by-case basis." 462 So.2d at 172. Each case necessarily requires an ad hoc examination of the realities of the employee's working conditions and the incentives available to her.
 
 
 22
 Winston, 791 F.2d at 433-34. An examination of the circumstances of Chaddrick's injury in light of these previous cases, convinces us that the district court was correct to apply comparative fault here.
 
 
 23
 We agree with the district court that the application of comparative fault in this case will promote user care. This is not a situation as in Robertson where the employee acted in an unsafe manner because his employer directed him to; Chaddrick's employer provided a safe means of crossing the rice paddy. We also agree with the district court that "unlike the plaintiff in Bell v. Jet Wheel Blast, Chaddrick's negligence was not ordinary in the sense of momentary forgetfulness. Rather, Chaddrick made the conscious decision to place himself in a position where heavy machinery parts were moving."
 
 
 24
 Neither will the application of comparative fault "drastically reduce the manufacturer's incentives to make a safer product." As we noted in Winston, this second issue is largely resolved by the first:
 
 
 25
 [A]s a general matter, where the application of comparative fault realistically promotes careful product use, the manufacturer cannot reasonably rely on careless use by future users to reduce its economic liability. To be sure, there will always be careless users to some degree, but the conclusion that realistic incentives do exist necessarily implies that there will be a substantial number of nonnegligent users.... Therefore, a drastic reduction in the manufacturer's incentive to make a safer product will not occur, because the presence of realistic incentives for careful product use prevents the manufacturer from reasonably relying on careless use by future users.
 
 
 26
 791 F.2d at 434 (emphasis in original).
 
 
 27
 Thus, holding Chaddrick responsible for his share of fault in the accident that produced his injury will serve realistically to promote careful product use while not drastically reducing Deere's incentives to make a safer skidder. We affirm the district court's application of comparative fault to reduce proportionately the damage award.
 
 B.
 
 28
 Chaddrick and Employers complain that even if comparative fault is applied, Chaddrick's portion should be found to be more on the order of 5 or 10 percent rather than 60 percent as the district court determined.
 
 
 29
 We first note that this determination was a finding of fact which this court will not overturn unless clearly erroneous. Flowers Transportation, Inc. v. M/V Peanut Hollinger, 664 F.2d 112, 114 (5th Cir.1981); see also Tullos v. Resource Drilling, Inc., 750 F.2d 380, 385 (5th Cir.1985). Here, there was more than sufficient evidence to support the district court's finding:
 
 
 30
 The owner's manual specifically states that no passengers are to be allowed to ride on the skidder. A small boat was provided by the employer and was being pulled behind the skidder for the workers to ride in. Chaddrick admitted he could have walked to the location on the break on the levee, but that would have required him to go all the way around. Mr. Chaddrick had worked for Universal Electric for many years and knew the propensities of the skidder. He knew or should have known of the dangers in riding on the front of the skidder or using the blade as a step. Thomas Russel testified he knew it was a dangerous place to sit, but it was the cleanest place on the machine. Chaddrick's foot could have been caught by the blade even without the defective routing of the cable if the operator, through some sort of miscommunication, had intended to raise the blade that high.
 
 
 31
 In addition, Chaddrick's contentions that the defect could have been easily prevented, that the skidder was inherently dangerous, and that other people could have been hurt in other ways do not even address the issue of his fault let alone provide grounds for overturning the district court's decision.
 
 C.
 
 32
 The determination of damages is also an issue of fact that will be overturned only if clearly erroneous. Graham v. Milky Way Barge, Inc., 811 F.2d 881, 894 (5th Cir.1987). Chaddrick complains that the district court's award for pain and suffering, mental anguish, and embarrassment is inadequate and that the court erroneously refused to award damages for loss of future earning capacity. Pain and suffering decisions are peculiarly within the trial court's provenance, see Parks v. Dowell Division of Dow Chemical Corp., 712 F.2d 154, 160 (5th Cir.1983), and our review of the record convinces us that the district court's $50,000 damage determination for Chaddrick's nonpecuniary loss is not clearly erroneous. There was also sufficient evidence, in particular the fact that in the nearly four years since the accident Chaddrick's wages have not diminished, to support the finding that there was no loss of earning capacity suffered by Chaddrick.
 
 D.
 
 33
 We also find no error in the district court's determination that the total award belongs to Employers. Louisiana Revised Statutes 23:1103[1] clearly directs this outcome where the damages are not sufficient to cover the amount already paid out to an employee. Appellant's contention that Moody v. Arabie, 498 So.2d 1081 (La.1986), somehow mandates a contrary result is meritless. Moody concerned the apportionment of the costs of recovery between the awards granted to an injured worker who brought a third-party suit and his employer who intervened in the action. The case is completely inapposite to Chaddrick's plea for a portion of the recovery in this case.
 
 E.
 
 34
 Finally, Deere contends that Employers and Chaddrick did not sustain their burden of proof regarding whether the skidder was defective when it left Deere's factory and whether the alleged defect was responsible for the accident. However, the issue here is not whether or not this court would conclude de novo that Employers and Chaddrick met their burden but rather whether the district court's conclusion that they did do so is clearly erroneous. Frota Oceanic Brasileira v. M/V Alice St. Philip, 790 F.2d 412, 414 (5th Cir.1986) ("If the District Court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse even if we would have weighed the evidence differently and arrived at a contrary conclusion.").
 
 
 35
 It is undisputed that the skidder's blade control cable was incorrectly routed when it was examined before the trial. The district court's conclusion that it was most probably also in that position when it was manufactured is not clearly erroneous. While Deere's alternative explanation that the misrouting occurred while it was in the possession of Universal Electric is also plausible, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 528 (1985).
 
 III.
 
 36
 For the reasons stated above, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This statute provides in part:
 In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor.
 La.Rev.Stat.Ann. Sec. 23:1103 (West 1985).