892 F.2d 378
 Prod.Liab.Rep. (CCH) P 12,346
Fred DAVIS, Plaintiff-Appellee, Cross-Appellant-Cross-Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANY, Intervenor-Appellee,
Cross-Appellee-Cross-Appellant,
v.
CONTINENTAL GIN COMPANY, et al., Defendants,
Allied Products Corporation, as successor Company to
Continental Gin Co., et al.,
Defendants-Appellants, Cross-Appellees.
 No. 89-4015.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 2, 1990.
Rehearing Denied Jan. 31, 1990.
 
 A.R. Christovich, Jr., J. Warren Gardner, Jr., Christovich & Kearney, New Orleans, La., for Allied Products Corp.
 
 
 1
 Bonnie L. Zakotnik, New Orleans, La., for Davis.
 
 
 2
 Ramsey L. Ogg, Davenport, Files & Kelly, Monroe, La., for Commercial Union Ins. Co.
 
 
 3
 Appeals from the United States District Court for the Western District of Louisiana.
 
 
 4
 Before DAVIS and SMITH, Circuit Judges, and LITTLE[1], District Judge.
 
 W. EUGENE DAVIS, Circuit Judge:
 
 5
 In this products liability action, Allied Products, formerly Continental Gin Company (Continental Gin), appeals the district court's judgment casting it for ten percent of Fred Davis' (Davis) damages. Davis appeals the district court's finding of comparative negligence, its damage determination, and its denial of litigation costs. Commercial Union Insurance Company (Commercial Union), the intervening compensation carrier, challenges the manner in which the court computed Commercial Union's liability for Davis' attorney's fees. We affirm in part, reverse in part and remand.
 
 I. Facts
 
 6
 Texas Road Gin Company (Texas Road) operates a cotton gin in Waterproof, Louisiana. It purchased lint cleaning machines in 1961 and 1964 from Continental Gin, which installed the equipment. The six lint cleaners operate in tandem next to three gin stands. Cotton is propelled from the gin stand to each lint cleaner by air pressure. The gin stand separates the seed from the cotton. The resulting lint cotton is then further cleaned in the lint cleaners. Trash from the lint cotton falls into the trash bin at the bottom of the first lint cleaner; the lint cotton then goes to the second lint cleaner for further cleaning.
 
 
 7
 Lint cleaners tend to clog when lint cotton gets tangled with debris in the rollers. If the accumulation of lint cotton and debris (tag) is not removed when it forms, it will jam the machine. Texas Road instructed its employees to use a "gin stick" a soft wooden stick approximately one foot long to flick the tags out of the lint cleaner to prevent jamming.
 
 
 8
 Continental Gin designed the lint cleaners with a guard consisting of four lateral metal bars at the opening of the lint cleaners. Each bar is approximately an inch to an inch and a half apart. The metal guard can be manually lifted or removed entirely. Two rollers are located behind these bars, approximately twelve to fourteen inches from the outside of the machine. The guards were designed to be removed only for maintenance purposes; however, the machine will still operate and the rollers will continue to turn with the guard lifted or removed. Employees usually removed or raised the metal guards to easily see and flick the tags out of the machine. The guards were frequently removed and stacked on the side of the machine during the ginning season. Texas Road's supervisors warned employees of the danger of working in the roller area of the lint machine.
 
 
 9
 In 1982, Continental Gin developed an interlock mechanism as an added safety feature for lint cleaners and informed Texas Road of the interlock's availability. This equipment would have prevented the machine rollers from operating with the guard lifted or removed. Texas Road chose not to purchase the interlock device.
 
 
 10
 In 1985, Davis was injured when he reached into the lint cleaner with his hand to remove a tag. His hand was caught in the rollers resulting in massive injury to his right hand. The guard had been removed from the cleaner.
 
 
 11
 Davis settled his Louisiana worker's compensation claim against Texas Road. He then brought a products liability suit against Continental Gin as manufacturer of the lint cleaner. Davis alleged that Continental Gin's design of the cleaner was inadequate because Continental Gin did not install an interlock device to prevent the rollers from operating while the guard was not in place. Texas Road's worker's compensation insurer, Commercial Union, intervened to obtain reimbursement.
 
 
 12
 The trial court fixed Davis' damages at $125,000. Fault was apportioned sixty percent to Davis, thirty percent to Texas Road and ten percent to Continental Gin. Continental Gin contends that the negligence of Texas Road and Davis were the sole causes of Davis' injury; therefore, the court erred in finding Continental Gin liable for any part of Davis' injury. Davis contends that the district court erred in: (1) finding that Continental Gin was liable for only ten percent of the damages; (2) assigning any negligence to Davis; (3) assessing inadequate damages; and (4) declining to order Commercial Union to pay a portion of the litigation costs. Commercial Union, the intervenor, contends that the trial court erred in: (1) considering the fault of Texas Road and assigning it a percentage of the fault and (2) calculating the attorney's fees owed by Commercial Union to Davis' attorney.
 
 
 13
 II. The Standard of Review and Applicable Law
 
 
 14
 This court may reverse the trial court's findings of fact only if such findings are "clearly erroneous." However, a reviewing court may decide a question of law de novo. Byram v. United States, 705 F.2d 1418, 1421 (5th Cir.1983).
 
 
 15
 Because subject matter jurisdiction in this case is founded on diversity, this case is controlled by Louisiana law.[2]
 
 III. Continental Gin's Liability
 
 16
 Under Louisiana law, to recover from a manufacturer in strict liability for a defective product the plaintiff must prove that the harm resulted from a condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control. Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir.1989). The issue in this case is whether the lint cleaner as designed and sold by Continental Gin was unreasonably dangerous to normal use.
 
 
 17
 Louisiana law recognizes four types of unreasonably dangerous products: (1) products that are unreasonably dangerous per se; (2) products unreasonably dangerous in construction or composition; (3) products unreasonably dangerous due to the manufacturer's failure to warn; and (4) products unreasonably dangerous because of design. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 114-15 (La.1986). The determination of whether a product is unreasonably dangerous is a fact question. Goode v. Herman Miller, Inc., 811 F.2d 866, 869 (5th Cir.1987).
 
 
 18
 With regard to Continental Gin's liability, the district court found that,Continental Gin was 10 percent liable for Davis' injury. The interlocking device was technologically developed at the time Continental Gin sold the lint cleaners to Texas Road Gin. It should have placed the device on the machine, since Continental Gin knew or should have known of the practice of removing tags while the machines were running by removing or lifting the guards.
 
 
 19
 Although the district court's opinion does not specify the legal theory for Continental Gin's liability, it is clearly founded on strict liability for a defectively designed product, rather than negligence or failure to warn as Continental Gin contends. The above findings of the district court track one of the three models established by Louisiana courts for finding a defectively designed product: A product is unreasonably dangerous because of its design if "there was a feasible way to design the product with less harmful consequences." Halphen, 484 So.2d at 115.
 
 
 20
 It is undisputed that an interlock would have made the lint cleaner safer. The district court found that Continental Gin knew or should have known that workers might remove the guards and, therefore, Continental Gin should have known that installation of an interlock that would shut off the equipment when the guard was removed would make the equipment safer. The lower court also determined that the technology for an interlock device was available at the time Continental Gin manufactured the lint cleaner. These findings are supported by the record and are not clearly erroneous.
 
 
 21
 Continental Gin contends that it has no liability here because operating the lint cleaner without the guard was not a "normal use" of the product. However, "normal use includes reasonably foreseeable misuse."[3] The record supports the district court's finding, in effect, that removing the guards was a foreseeable misuse of the cleaner.
 
 
 22
 Continental Gin, relying on Beck, 882 F.2d 993, argues that it should be relieved of liability because it offered Texas Road the opportunity to purchase the interlock and offered free warning decals to attach to the machine. Continental Gin's reliance on Beck is misplaced. The only issue on appeal in Beck was the manufacturer's liability for failure to warn of the product's dangers; the manufacturer was not liable under a theory of defective design because the employer's acts were held to be a superceding cause of the injury. Therefore, Beck does not support Continental Gin's argument that the district court erred as a matter of law in concluding that the product was defectively designed. Even if Continental Gin had no liability to Davis on a failure to warn theory, this does not exonerate Continental for defectively designing the product.[4] We conclude that under the district court's findings, which are not clearly erroneous, the imposition of liability against Continental Gin is consistent with Louisiana law.
 
 IV. Davis' Fault
 
 23
 Davis contends that application of the comparative negligence doctrine is inappropriate in this strict liability case, and that, even if applicable, apportioning sixty percent of the fault to him is unwarranted.
 
 
 24
 In Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), the Louisiana Supreme Court set forth the relevant test to determine when the plaintiff's fault reduces the plaintiff's net recovery in a products liability case. A court should reduce a strict liability judgment as a result of the plaintiff's fault when the consequent reduction of the award will realistically promote user care without drastically reducing the manufacturer's incentive to make a safer product. See also Robertson v. Superior PMI, Inc., 791 F.2d 402, 407 (5th Cir.1986); Winston v. International Harvester Corp., 791 F.2d 430, 432 (5th Cir.1986); Employer Nat. Ins. Co. v. Chaddrick, 826 F.2d 381, 383 (5th Cir.1987).
 
 
 25
 Application of comparative negligence in this case would not drastically reduce the manufacturer's incentive to design safer products. In 1982, before any liability was assessed against it, Continental Gin redesigned its equipment to include an interlock.
 
 
 26
 The focus, therefore, is on the effect, if any, the reduction of the award for the plaintiff's comparative negligence will have on user care. This inquiry leads us to consider the type of activity being performed and the cause of the injury. In Bell and Robertson, where the courts declined to apply comparative negligence, the plaintiff was engaged in monotonous and routine assembly line work. The courts determined that the imposition of comparative negligence would not deter acts that were the result of momentary neglect or inattention. Bell, 462 So.2d at 171-72; Robertson, 791 F.2d at 408. In contrast, in Winston the employee dismounted from a vehicle in a way that was dangerous and in Chaddrick the employee allowed the vehicle to go off the road. Both cases involved acts by the plaintiff beyond mere inattention and the courts applied comparative fault. Winston, 791 F.2d at 433; Chaddrick, 826 F.2d at 385.
 
 
 27
 In this case, Davis' job was somewhat routine but he did move around the gin house in performing various tasks; he was not simply stationed in front of the lint cleaner to remove lint. Davis' injury did not result from simple momentary neglect or inattention while performing a repetitive task. Davis used his hand to remove lint instead of a gin stick as he had been instructed. Because Davis' injury was directly related to his failure to follow established procedures, reduction of his award for his own fault should encourage user care. The district court was entitled to conclude that the application of comparative negligence principles here will encourage users to leave the guards on, to use a gin stick rather than their hands, and to shut down the machine before placing their hands near moving parts.
 
 
 28
 Davis challenges the district court's apportionment of sixty percent fault to him. There was abundant evidence at trial that Davis' employer and supervisors had warned him of the dangers of the machine. Davis had been instructed to use a gin stick rather than his hand when unclogging the cleaner. Davis admitted that an employee who had been injured when he put his hand in a cleaner showed Davis the severe injury that resulted. These facts support the district court's determination that Davis was aware of the danger; despite the warnings, he put his hand in the machine while it was operating. Apportioning sixty percent of the fault for the accident to Davis was not clearly erroneous.
 
 
 29
 Davis also contends that attributing only 10% of the fault to Continental Gin was manifest error. However the abundant evidence of extreme negligence on the part of Davis together with the evidence of Continental Gin's slight connection with the accident supports the district court's determination that Continental Gin was only ten percent at fault.
 
 V. Damages
 
 30
 Davis challenges as insufficient the district court's damage award of $125,000. However, "[t]he trial court has great latitude in assessing damages" and we will not reverse unless the determination of damages was clearly erroneous. Parks v. Dowell Div. of Dow Chemical Corp., 712 F.2d 154, 160 (5th Cir.1983).
 
 
 31
 Although Davis cites a number of cases in which courts awarded plaintiffs who lost a hand substantially more than $125,000, this does not imply that the district court erred in determining Davis' damages. Therefore, plaintiff's reliance on the damage award in Robertson, 791 F.2d at 410-11, and other cases involving hand injuries is misplaced.
 
 
 32
 Other than the obvious injury to plaintiff's hand, there was virtually no damage evidence presented at trial. Davis presented no medical or economic testimony. The district court's order awarding Davis $125,000 is not clearly erroneous.
 
 VI. Apportionment of Fault to Texas Road
 
 33
 Commercial Union, Texas Road's worker's compensation insurer contends that the district court erred when it considered the fault of Texas Road in apportioning liability.
 
 
 34
 The rule that an employer's fault should not be considered in apportioning liability among the negligent parties was established in Franklin v. Oilfield Heavy Haulers, 478 So.2d 549, 557 (La.App. [3d Cir.] 1985), writs denied, 481 So.2d 1330, 1331 (1986). In Franklin the plaintiff was found free of fault and the trial court apportioned negligence among the plaintiff's employer and two defendants. On appeal, the court reversed, holding that all negligence must be divided between the two defendants. The court reasoned that because the employer paid worker's compensation benefits to plaintiff, the employer was immune from all tort liability and the employer's fault was irrelevant to plaintiff's third party tort action. The court explained that reducing the non-negligent plaintiff's recovery to the extent of the employer's fault would erode the worker's compensation system. Id.
 
 
 35
 With one exception, the Louisiana courts have consistently followed the Franklin rule.[5] In Trosclair v. Terrebonne Parish School Bd., 489 So.2d 1293 (La.App. [1st Cir.], writ denied, 493 So.2d 647 (1986), a Louisiana court reached a conclusion directly contrary to Franklin. However, Trosclair was decided shortly after Franklin, did not cite Franklin, and has not been followed by other Louisiana courts. In Nance v. Gulf Oil Corp., 817 F.2d 1176 (5th Cir.1987), we distinguished Franklin and allowed the fault of the employer to reduce the plaintiff's recovery against the defendants. However, a recent opinion of this court acknowledged that the Louisiana courts have not accepted the Nance reasoning. See Reed v. Offshore, Inc., 872 F.2d 680, 682-83, reh'g. denied, 879 F.2d 151 (5th Cir.1989). See also Myers v. Pennzoil, 889 F.2d 1457 (5th Cir.1989).[6]
 
 
 36
 Thus, as Nance recognizes, Louisiana courts do not consider the negligence of the employer in apportioning fault for the employee's injury. Therefore, the district court erred in considering Texas Road's fault in assessing liability for Davis' injury.
 
 
 37
 Our conclusion that Texas Road's fault should not have been considered raises the question of how to reapportion the thirty percent of fault the district court attributed to Texas Road. Franklin is instructive on this point. In Franklin, where the employee was fault free, the appellate court reapportioned the fault the trial court improperly assigned to the employer among the non-employer defendants in accordance with their previously-determined relative liability. Weber, 542 So.2d at 554, provides support for apportioning part of the immune employer's fault to a plaintiff who is partially at fault. We conclude, therefore, that a Louisiana appellate court in our position would reapportion the employer's liability among the responsible parties. In this case, Continental Gin and Davis are the responsible parties. Therefore, Texas Road's thirty percent fault should be divided between Davis and Continental Gin 6 to 1 which is in proportion to their previously determined degrees of fault. Applying this formula, Continental Gin's proportion of the thirty percent fault is 4.29 percent and Davis' is 25.71 percent. Thus, Continental Gin is responsible for a total of 14.29 percent of Davis' damages.[7]
 
 VII. Attorney's Fees and Litigation Costs
 
 38
 Commercial Union challenges the computation of the attorney's fees it owes Davis' attorney. However, "[a]n award of attorneys' fees is within the discretion of the trial court, and we will reverse only where that discretion has been abused." Atlantic Richfield Co. v. Manges, 702 F.2d 85, 87 (5th Cir.1983).
 
 
 39
 Davis had a contingent fee arrangement with his attorney, whereby she was to receive forty percent of all sums awarded. Under Moody v. Arabie, 498 So.2d 1081 (La.1986) the intervenor has a duty to pay its share of the attorney's fees expended by the injured employee in obtaining the recovery. The district court did just that; it required Commercial Union to pay fees to Davis' attorney on the portion of the award allotted to Commercial Union. This approach is consistent with the formula set out in Moody and the district court did not abuse its discretion.[8]
 
 
 40
 Although the district court ordered Commercial Union to pay a portion of the attorney's fees, it denied recovery from Commercial Union for litigation costs. Davis contends that under Moody, Commercial Union must pay a proportionate part of the litigation expenses also. However, the district court's denial of litigation costs was not based on an interpretation of Moody. The court explained that the affidavit in support of the motion for costs "fail[ed] to set out with sufficient particularity [the expenditures] in order for the Court to determine the reasonableness" of the costs. The record indicates that the district court did not abuse its discretion in making this determination.
 
 
 41
 Accordingly, the judgment of the district court is affirmed in part, reversed in part and remanded for entry of judgment consistent with this opinion.
 
 
 42
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [2]
 Neither party argues that the recently-enacted Louisiana Products Liability Act, La.Rev.Stat.Ann. § 9:2800.51, applies to this case; therefore, we apply the law as established by the Louisiana legislature and courts prior to the 1988 act. The 1988 act codifies much of the existing products liability law, with certain important modifications. For example, the legislature has eliminated the unreasonably dangerous per se category, see Valenti v. Surgiteck-Flash Medical Eng'g Corp., 875 F.2d 466, 467 n. 1 (5th Cir.1989), and by so doing has legislatively repealed part of the holding in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986), discussed infra
 
 
 [3]
 Goode, 811 F.2d at 871. "Merely because the need for the safety device would not arise when the product was used in its intended manner, does not necessarily mean that the absence of the safety device cannot render the product unreasonably dangerous." Davidson v. Stanadyne, Inc., 718 F.2d 1334, 1338 (5th Cir.1983) (applying Texas law)
 
 
 [4]
 For example, see Leday v. Aztec Corp., 544 So.2d 1249, 1251-52 (La.App.1989), and Ingram v. Caterpillar Machinery Corp., 535 So.2d 723, 728-29 (La.1988), where the Louisiana courts addressed the two theories of liability as distinct predicates for recovery
 
 
 [5]
 See Weber v. Caterpillar Machinery Corp., 542 So.2d 544, 554 (La.App.1989); Morrison v. J.A. Jones Const. Co. Inc., 537 So.2d 360, 365 (La.App.1988); Thompson v. PetroUnited Terminals, Inc., 536 So.2d 504, 515-17 (La.App.1988), writs denied, 537 So.2d 212, 213 (1989); Eskine v. Regional Transit Authority, 531 So.2d 1159, 1161-62 (La.App.1988); Snyder v. Taylor, 523 So.2d 1348, 1349 n. 1, 1355 (La.App.1988) writ denied 531 So.2d 268 (1988); Senez v. Grumman Flexible Corp., 518 So.2d 574, 577 (La.App.1987), writ denied, 521 So.2d 1151 (1988)
 
 
 [6]
 In 1987, the Louisiana legislature amended La.Civ.Code art. 2324, the statute which covers apportionment of liability among tortfeasors. This amendment may allow a court to consider the negligence of the employer in apportioning liability. However, the amendment is not relevant to this case because the amendment does not apply retroactively. See Eskine, 531 So.2d at 1162
 
 
 [7]
 The reapportionment of Texas Road's liability changes the amount of Davis' recovery against Continental Gin and Commercial Union's reimbursement. Continental Gin is liable to Davis for 14.29 percent of Davis' $125,000 damages, which equals $17,862.50. Commercial Union's $20,566.65 compensation lien must be reduced by 85.71 percent, the percentage of Davis' fault. La.Rev.Stat.Ann. § 23.1101. Therefore, Commercial Union has a net lien of $2,938.97, plus interest, against Davis' recovery from Continental Gin. Davis should receive a net recovery of $14,923.53, plus interest, from Continental Gin. Davis' attorney's contingent fee is discussed below
 
 
 [8]
 Our reapportionment of Texas Road's liability reduces Commercial Union's lien to $2,938.97. See note 7. Commercial Union's share of the recovery is, thereby, also reduced to 16.45% ($2,938.97 / $17,862.50). Following the same formula used by the district court, Davis' attorney is to receive forty percent of the $17,862.50, which is $7,145. Commercial Union must pay 16.45 percent of $7,145, or $1,175.35